IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
_____ DIVISION

JOHN PLUMMER                                                          PLAINTIFF

V.                          NO. _____

LINCOLN LIFE ASSUANCE COMPANY OF BOSTON                    DEFENDANT

## COMPLAINT

### Introduction

1. John Plummer ("Plummer") brings this action to recover long term disability ("LTD") benefits under a Group Disability Income Policy issued by Lincoln Life Assurance Company of Boston ("Lincoln") and to obtain other relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

### Parties

2. Plummer was at the time of the events described herein and is now a citizen of Washington County, Arkansas.

3. Lincoln is a domestic corporation, organized by the laws of Massachusetts, with its principal place of business in Boston, Massachusetts, which may be served with process at:

> Lincoln Life Assurance Company of Boston
> c/o Corporation Service Company
> 300 Spring Building, Suite 900
> 300 Spring Street, Little Rock, AR 72201

## Jurisdiction

4.     This court has jurisdiction under Ark. Code Ann. § 16-13-201(a) and the Arkansas Constitution, Amendment 80, § 6(A), each of which state that circuit courts shall have original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution. This is a justiciable matter not otherwise assigned pursuant to the Arkansas Constitution. This court also has jurisdiction under ERISA, 29 U.S.C. § 1132(e)(1), which states that state courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of a civil action brought by a participant or beneficiary to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of the plan, and to clarify his rights to future benefits under the terms of the plan.

## Venue

5.     This court is the proper venue under Ark. Code Ann. § 23-79-204, which states that an action brought by an insured against an insurer as to a loss occurring under an insurance policy shall be brought in either the county in which the loss occurred or the county of the insured's residence at the time of the loss. Plummer was a resident of Washington County, Arkansas, at the time of the loss described herein.

## Facts

6.     Lincoln issued a Group Disability Income Policy to Walmart Inc. Lincoln Claim File at 38.

7.     The policy provided short term disability ("STD") benefits and long term disability ("LTD") benefits to employees of Walmart Inc.

8.     Plummer was a covered person under the policy.

2

9. From 2002 until 2019, Plummer worked for Walmart Inc. in various capacities as a senior manager and director. Lincoln Claim File at 1, 1048-1049, 1584.

10. As of the date of his disability discussed herein, Walmart Inc. had assigned to Plummer the occupation of "TBC Tire Tech," and Lincoln considered that to be Plummer's occupation for all purposes discussed herein under the terms of its policy. Lincoln Claim File at 1, 6, 7, 8, 9, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 183, 194, 246, 251, 286, 1017, 1024, 1380, 1391.

11. According to Lincoln, the physical demands of Plummer's occupation as a TBC Tire Tech were "heavy." Lincoln Claim File at 1, 25, 215, 1391.

12. The Dictionary of Occupational Titles, published by the United States Department of Labor, states "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

13. On 01/22/2019, Plummer became disabled under the terms of Lincoln's policy, due in large part to the varied physical diagnoses discussed below and the side effects of pain and pain medications related to those diagnoses. Lincoln Claim File at 1, 1367.

14. Lincoln or one of its affiliated companies paid STD benefits to Plummer until those benefits expired.

15. On 07/24/2019, Plummer wrote in an Activities Questionnaire, completed at Lincoln's request, that he could not engage in gainful employment because of, among other things, neck and shoulder pain, poor memory, and confusion. Claim File at 1474.

16. On 07/30/2019, Plummer became eligible to begin receiving LTD benefits from Lincoln, and Lincoln commenced paying LTD benefits to him. Lincoln Claim File at 1, 1367.

17. On 08/06/2019 and 08/20/2019, Lonna Shay Bufford, M.D., Plummer's family practice physician, wrote that Plummer experienced pain in multiple joints, elbows, wrists, shoulders, and the neck. Lincoln Claim File at 772, 1199, 1401.

18. On 08/21/2019, Debra Albert, RN, a Nurse Disability Consultant working for Lincoln, wrote in a Nursing Memorandum that Plummer had undergone three left shoulder surgeries since 2015 [correctly two right shoulder surgeries and one left shoulder surgery]; that records from Christopher Arnold, M.D., Plummer's treating orthopedic surgeon, stated that Plummer reported he had been in a car wreck in 2019 and reported ongoing pain in his left shoulder; and that records from Dr. Bufford, Plummer's above-mentioned treating family practice physician, stated that Plummer complained of joint pain in the right shoulder, elbow, write, and upper back, had restrictions and limitations of not lifting, pushing, or pulling greater than 10 pounds with the left arm and 20 pounds with both arms, should perform no activities above the shoulder, and that these restrictions and limitations were all supported through 08/06/2019. Lincoln Claim File at 1397-1398.

19. On 09/11/2019, Gayle Brown, M.D., a physical medicine and rehabilitation physician retained for Lincoln, wrote that Plummer discontinued working in part due to left shoulder pain for which he underwent surgery and that post-operative notes through 05/13/2019 confirmed worsening left shoulder pain and weakness. Dr. Brown wrote that Plummer's physical restrictions included occasional

lifting/carrying/pushing/pulling 20 lbs. using both upper extremities, no lifting above the shoulder level using the left upper extremity, and no repetitive power grasping/torquing using the right hand. Lincoln Claim File at 1391-1392.

20. On 09/25/2019, Lincoln wrote to Plummer that it had approved his claim for LTD benefits. Lincoln Claim File at 1367.

21. On 09/30/2019, Lincoln commenced paying LTD benefits to Plummer. Lincoln Claim File at 1367.

22. Plummer's medical condition did not thereafter improve, but only worsened, as shown below.

23. No record from any treating physician or any other source indicated any improvement in Plummer's medical condition at any time, including up to today, as shown below.

24. On 04/02/2019, 05/14/2019, 12/17/2019, and 12/31/2019, Christopher Arnold, M.D., Plummer's treating orthopedic surgeon, wrote that Plummer had pain in his left shoulder; had pain in his right knee; and was unable to go up or down stairs, get in and out of a car, or walk 5 to 10 blocks. Lincoln Claim File at 653, 659, 666, 671, 1171, 1177.

25. On 01/11/2020, Plummer wrote in an Activities Questionnaire, completed at Lincoln's request, that he could only sit, stand, or walk for short periods of time and that pain and discomfort prevented him from staying in any position for more than a few minutes. Lincoln Claim File at 1050-1052.

26. On 09/03/2019, 02/17/2020, 05/19/2020, and 10/19/2020, Song Zang, M.D., Plummer's treating rheumatologist, wrote in medical records that Plummer had

joint pain, left elbow pain, fibromyalgia, and osteoarthritis. Lincoln Claim File at 628, 1106, 1109, 1110.

27. On 10/30/2020 and 12/01/2020, the Social Security Administration wrote to Plummer that it had issued a fully favorable decision on his claim for disability benefits, finding that he was disabled under its rules. Lincoln Claim File at 1078 & 1081.

28. In January of 2021, Plummer lost the medical insurance he had theretofore received through Walmart Inc. and thus lost his source for paying for visits to physicians until he later became a Medicare recipient on 09/01/2021, and Plummer so informed Lincoln. Lincoln Claim File at 927.

30. On 02/09/2021, Lincoln ceased paying LTD benefits to Plummer. Lincoln Claim File at 1013.

31. Thus, Lincoln paid LTD benefits to Plummer from 09/30/2019 to 02/09/2021, over 16 months, terminating those benefits soon after Plummer had lost his medical insurance, at which time Lincoln knew that Plummer would have less access to medical providers and greater difficulty supporting his claim and his appeal with records of physician visits. Yet, Plummer still submitted adequate additional medical records and other evidence from physicians to support of his appeal, as shown below.

32. In its letter terminating Plummer's LTD benefits, Lincoln wrote "Since the medical documentation and medical restrictions we received do not establish that your medical condition prevents you from performing your job duties, we found that you no longer meet the LTD Policy criteria for LTD payments." Lincoln Claim File at 1016.

6

33. Lincoln did not cite evidence that Plummer's medical condition had improved in any way since it previously decided that he was disabled, and there is no such evidence.

34. Plummer, not represented by an attorney at that time, wrote to Lincoln in a series of emails that he wished to appeal Lincoln's decision and provided supporting documentation, as discussed below.

35. On 04/08/2021, during the appeal process, Plummer wrote to Lincoln that he had headaches that incapacitated his ability to function; that he took pain medications that kept him drowsy and did not relieve the pain; that he had neuropathic pain down his leg that prevented him from sleeping; that he had pain in multiple joints, his wrist, elbows, shoulders, and fingers; that he could not focus; and that he could not perform critical thinking and executive decisions or make it to the office every day of any given week. Lincoln Claim File at 966-967.

36. In considering Plummer's appeal, Lincoln and its retained medical professionals did not consider whether any of Plummer's above problems prevented him from performing his own occupation or any occupation.

37. Leslie Cadot, M.D., an occupational medicine physician who wrote a report for Lincoln after Plummer submitted his appeal, on which Lincoln eventually relied to deny Plummer's appeal, did not discuss any of Plummer's above reported problems in her report. Lincoln Claim File at 204-212.

38. On 05/10/2021, Plummer wrote to Lincoln that "The hydrocodone [a medication for pain] doesn't help with clarity or attentiveness." Lincoln Claim File at 935.

39. In considering Plummer's appeal, Lincoln and its retained medical professionals did not consider whether the side effects of Plummer's pain medicine prevented him from performing his own occupation or any occupation.

40. Lincoln's Dr. Cadot did not discuss the side effects of Plummer's pain medicine in her report. Lincoln Claim File at 204-212.

41. On 05/10/2021, during the appeal process, Plummer wrote to Lincoln that his pain in varied locations was overwhelming; that he could not carry a gallon of milk; that he struggled with walking for more than a few minutes; that he could not maintain any given position for any period of time; and that his headaches were overwhelming. Lincoln Claim File at 927.

42. Lincoln and its retained medical professionals did not consider whether any of the above problems prevented Plummer from performing his own occupation or any occupation.

43. Lincoln's Dr. Cadot did not discuss in her report any of the above problems. Lincoln Claim File at 204-212.

44. On 05/19/2021, during the appeal process, Tracie Elaine Fullove, M.D., Plummer's treating family medicine physician, wrote that Plummer had memory difficulties and stage 3 chronic kidney disease. Lincoln Claim File at 284.

45. Lincoln and its retained medical professionals did not consider whether Plummer's memory difficulties and stage 3 kidney disease prevented him from performing his own occupation or any occupation.

46. Lincoln's Dr. Cadot did not discuss in her report either memory difficulties or stage 3 chronic kidney disease. Lincoln Claim File at 204-212.

47. On 06/04/2021, during the appeal process, Song Zang, M.D., Plummer's treating rheumatologist, wrote in a Medical Source Statement – Physical, completed at the request of Lincoln, that Plummer could lift, carry, push, or pull less than 10 pounds; could only stand, walk, or sit for only one hour in a eight-hour day; and could stand, walk, or sit for only a half hour continuously; and that Plummer had diffuse pain, fatigue, and subjective weakness. Lincoln Claim File at 258-260.

48. Lincoln and its retained medical professionals did not consider whether any of Dr. Zang' above findings prevented Plummer from performing his own occupation or any occupation.

49. Lincoln's Dr. Cadot acknowledged receiving Dr. Zang's above statement but did not discuss any of Dr. Zang's findings from the statement in her report. Lincoln Claim File at 204-212.

50. On 06/18/2021, during the appeal process, Plummer wrote to Lincoln that he could not carry groceries; he could not hold onto a gallon of milk; he had difficulty sleeping from positional pain; he could not stand, sit or walk for any period of time without pain and discomfort; he took three 7.5mg of hydrocodone per day for pain; hydrocodone caused drowsiness and weakness; he could not strategically plan, make difficult decisions, or understand and resolve complex situations; he could not perform his previous job as a Senior Project Manager; and he could not work as a TBC Tire Tech because "I very quickly determined the standing and moving inventory was beyond my abilities." Lincoln Claim File at 286.

51. Lincoln and its retained medical professionals did not consider whether Plummer's above problems prevented him from performing his own occupation or any occupation.

52. Lincoln's Dr. Cadot did not discuss any of Plummer's above reported limitations in her report. Lincoln Claim File at 204-212.

53. On 07/28/2021, Lincoln wrote to Plummer that it denied his appeal. Lincoln Claim File at 183.

54. Plummer was unable to perform his own occupation under the "Own Occupation" period in the policy, which lasted 24 months, Lincoln Claim File at 44 & 50, and Plummer is entitled to LTD benefits for the duration of that period.

55. Plummer was and still is unable to perform any occupation under the "Any Occupation" period in the policy, which will last until Plummer reaches age 67 on 10/11/2027, Lincoln Claim File at 45, 48 & 50, and Plummer is entitled to LTD benefits under the duration of that period so long as he continues to be disabled under the terms of the policy.

## Civil Action Under ERISA

56. All allegations herein are incorporated in this part.

57. Lincoln wrongfully and unreasonably terminated Plummer's LTD benefits and denied his appeal even though Lincoln had no evidentiary basis for doing so and was presented with evidence that Plummer was disabled under the terms of the policy.

58. Pursuant to ERISA, 29 USC § 1132(a)(1)(B), Plummer, as a participant or beneficiary of the policy, may bring this civil action to recover LTD benefits due to him

under the terms of the policy, to enforce his rights under the terms of the policy, and to clarify his rights to future benefits under the terms of the policy.

### Remand

59. A reviewing court may remand a claim where the insurer or plan administrator failed to make adequate findings or explain the rational for its decision. *Abram v. Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005).

60. Lincoln failed to consider all evidence, make adequate findings, and explain the rationale for its decision.

### Damages & Relief

61. All allegations herein are incorporated in this part.

62. Lincoln should be required to pay Plummer past due LTD benefits from 02/09/2021 to the date of the judgment.

63. Lincoln should be required to reinstate Plummer's LTD benefits and pay those benefits into the future up to 10/11/2027 so long as he remains eligible for those benefits under the terms of the policy.

64. Lincoln should be required to pay Plummer all reasonable attorney's fees for the prosecution and collection of the loss under ERISA, 29 U.S.C. § 1132(g).

65. Lincoln should be required to pay Plummer the costs of litigation.

66. Lincoln should be required to pay Plummer pre-judgment interest from 02/09/2021 to the date of the judgment.

67. Alternatively, the court should remand Plummer's claim to Lincoln and require Lincoln to consider all evidence, make adequate findings, and explain the rational for its decision.

## Prayer for Relief

WHEREFORE, Plummer prays for judgment against Lincoln, in excess of the amount required for federal court jurisdiction in diversity of citizenship cases, for all damages suffered, past due long term disability benefits from 02/09/2021 to the date of the judgment, reinstatement of his long term disability benefits and payment of those benefits into the future so long as he remains eligible for those benefits under the terms of the policy, reasonable attorney's fees, pre-judgment interest, post-judgment interest, costs, and all other relief to which he is entitled. Alternatively, Plummer prays that the court remand Plummer's claim to Lincoln and require Lincoln to consider all evidence, make adequate findings, and explain the rational for its decision.

Respectfully submitted,

*/s/ Neil Chamberlin*
Neil Chamberlin, # 93222
MCMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201
Telephone 501-374-5411
Facsimile 501-374-5118
neil@mcmathlaw.com