## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

ROGER BROOKS                                             PLAINTIFF

v.                        NO. 4:17CV00817 JLH

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON                                       DEFENDANT

## <u>ORDER</u>

This is an ERISA case that Roger Brooks commenced in the Circuit Court of Faulkner County, Arkansas. The defendant, Liberty Life Assurance Company of Boston, removed the action to this Court. Brooks has moved to remand the action because Liberty's lawyer was not admitted to practice in the state courts of Arkansas when the notice of removal was filed in the circuit court. In response, Liberty has submitted an affidavit from a deputy clerk in the circuit court who testified that she received an inquiry from Liberty's lawyer and agreed to accept filing a notice of removal.

Brooks relies on *Desoto Gathering Co. LLC v. Hill*, 2017 Ark. 326, 531 S.W.3d 396 (2017), where the court reiterated its longstanding principle that when a person who is not licensed to practice law in Arkansas attempts to represent the interests of another by submitting himself to the jurisdiction of a court, the pleadings filed by that person are a nullity. *Id*. at *9, 531 S.W.3d at 402. Here, however, Liberty was not submitting itself to the jurisdiction of the state courts. To the contrary, it was giving notice that it was removing the case to federal court and submitting to jurisdiction here. Liberty's lawyer was authorized to practice in the Eastern District of Arkansas at the time the removal papers were filed. Because Liberty was submitting to the jurisdiction of this Court and because its lawyer was authorized to practice in this Court, the notice of removal was not a nullity. The motion to remand is therefore DENIED. Document #9.

IT IS SO ORDERED this 7th day of February, 2018.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

# Bohanna v. Hartford Life & Accident Ins. Co.

United States District Court for the Western District of Missouri, Western Division

March 16, 2012, Decided; March 16, 2012, Filed

No. 11-899-CV-W-DW

**Reporter**

848 F. Supp. 2d 1009 *; 2012 U.S. Dist. LEXIS 54182 **; 2012 WL 975419

THOMAS BOHANNA, Plaintiff, v. HARTFORD LIFE & ACCIDENT INSURANCE COMPANY, et al., Defendants.

**Counsel:** [**1] For Thomas Bohanna, James Bohanna, Plaintiffs: Matthew B. Heath, LEAD ATTORNEY, Law Offices of Stephen Bough, Kansas City, MO; Stephen R. Bough, LEAD ATTORNEY, The Law Offices of Stephen R. Bough, Kansas City, MO.

For Hartford Life & Accident Insurance Company, Defendant: Richard J Pautler, Thompson Coburn, St. Louis, MO.

For Sears Life Insurance Company, Defendant: Richard J Pautler, LEAD ATTORNEY, Thompson Coburn, St. Louis, MO.

For Stonebridge Life Insurance Company, Defendant: Karrie J. Clinkinbeard, LEAD ATTORNEY, Armstrong Teasdale LLP-KCMO, Kansas City, MO; Patrick J. Kenny, LEAD ATTORNEY, Armstrong Teasdale LLP, St. Louis, MO.

**Judges:** Dean Whipple, United States District Judge.

**Opinion by:** Dean Whipple

## Opinion

 [*1011] **ORDER**

Before the Court is Defendant Stonebridge Life Insurance Company and Plaintiff's Stipulated Motion to Remand (Doc. 15), Joint Stipulation to Remand Between Plaintiff Thomas Bohanna and Defendant Sears Life Insurance Company (Doc. 17), Plaintiff's Motion to Remand (Doc. 19), Defendant Hartford Life and Accident Insurance Company's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion to Remand (Doc. 37), Motion to Dismiss by Defendant Hartford Life and Accident Insurance Company (Doc. [**2] 22), Motion to Dismiss and/or Stay by Sears Life Insurance Company (Doc. 28), Plaintiff's Motion for Leave to Amend (Doc. 31), Plaintiff's Motion to Remand for Lack of Notice (Doc. 44), Plaintiff's Amended Motion to Remand for Lack of Notice (Doc. 45), Plaintiff's Motion to Strike Acknowledgment of Filing of Notice of Removal (Doc. 47) and Defendant Hartford Life and Accident Insurance Company's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Second Motion to Remand (Doc. 52).

## I. BACKGROUND

On July 28, 2011, Plaintiff Thomas Bohanna filed his petition in the Circuit Court of Jackson County, Missouri. His petition contains three counts for breach of contract: one count against Stonebridge Life Insurance Company ("Stonebridge"), one count against Sears Life Insurance Company ("Sears") and one count against Hartford Life and Accident Insurance Company ("Hartford"). Plaintiff alleges that these three insurance companies issued accidental death life insurance policies to his mother, Ida A. Bohanna. On or about March 27, 2010, Ms. Bohanna passed away. Prior to her passing, Hartford issued three life insurance policies to Ms. Bohanna, Sears issued one life

Case 5:22-cv-05102-TLB    Document 12-1    Filed 07/14/22    Page 4 of 56 PageID #: 398

848 F. Supp. 2d 1009, *1011; 2012 U.S. Dist. LEXIS 54182, **2

insurance policy to [**3] Ms. Bohanna and Stonebridge issued one life insurance policy to Ms. Bohanna. The amounts of coverage totaled: $103,000 under the Hartford policies; $50,000 under the Sears policy; and $30,000 under the Stonebridge policy.

Plaintiff alleges that Ms. Bohanna paid all premiums due during her lifetime and that the defendants have an obligation to pay the full amount of benefits to Plaintiff as the beneficiary under the policies. Plaintiff states that the defendants have refused to pay under the policies, thereby failing to meet their contractual obligations. Defendants maintain that they are not obligated to pay under the policies because Ms. Bohanna's death was not a covered loss under the policies.

On September 8, 2011, Defendant Hartford removed the action to this Court on the basis of diversity jurisdiction. Hartford states that there is complete diversity between the parties and Plaintiff seeks more than $75,000 exclusive of costs and interests. Both Sears and Stonebridge [*1012] filed consents to removal. [1] Although Sears and Stonebridge filed consents to removal, within two weeks Plaintiff and Stonebridge filed a stipulated motion to remand, as did Plaintiff and Sears. In these stipulated [**4] motions, the parties state that remand is appropriate because neither the claim against Stonebridge nor Sears exceeds the jurisdictional minimum of $75,000.

Plaintiff then filed a motion to remand the entire action based on lack of subject matter jurisdiction. Plaintiff states that because only the claim against Hartford meets the amount in controversy requirement, the entire case should be remanded because partial remand is inappropriate and splitting the case could result in inconsistent rulings. Hartford opposed the motion. Subsequently, Hartford filed a motion to dismiss

---

[1] In Stonebridge's consent to removal, it acknowledges that the claim Plaintiff asserts against it does not exceed $75,000; however it does not object and thereby consents to removal.

for failure to state a claim and Sears filed a motion to dismiss and/or stay on the basis that Plaintiff failed to state a claim and failed to join a necessary party. Plaintiff then filed a motion to amend his complaint, stating that the amended complaint remedies the supposed deficiencies referenced by Sears and Hartford in their motions to dismiss.

Thereafter, Plaintiff filed another motion to remand, this time claiming that remand [**5] is appropriate because Hartford failed to give notice of removal to the state court. Four days later Plaintiff filed an amended motion to remand in order to reiterate the basis for and elaborate on its most recently-filed motion to remand. That same day, Hartford filed a notice of the state court's acknowledgment of removal. Plaintiff filed a motion to strike the notice. All motions have been fully briefed and are now ready for ruling.

## II. REMAND

Plaintiff argues that remand of this entire action is appropriate on two separate bases, however the Court finds that remand is not appropriate under either basis. First, Plaintiff argues that only the claim against Hartford meets the amount in controversy requirement; therefore, the entire case should be remanded because partial remand is inappropriate and splitting the case could result in inconsistent rulings. The Court agrees with Plaintiff that partial remand is inappropriate, however, the Court finds that it does not have the discretion to remand this entire action.

Defendant Hartford properly removed this action pursuant to 28 U.S.C. § 1332 and § 1441. Section 1332 provides that districts courts have original jurisdiction of all civil [**6] actions where the matter in controversy exceeds $75,000 and the parties are citizens of different states. Section 1441 allows for the removal of any civil action of which the district court has original jurisdiction. The amount in controversy in this action exceeds $75,000 and the parties are each citizens of

Case 5:22-cv-05102-TLB    Document 12-1    Filed 07/14/22    Page 5 of 56 PageID #: 399

848 F. Supp. 2d 1009, *1012; 2012 U.S. Dist. LEXIS 54182, **6

different states. Therefore, this Court has subject matter jurisdiction over the action and Hartford properly removed it.

Plaintiff argues that the claims against Stonebridge and Sears must be remanded to state court because each individual claim is for the less than the jurisdictional minimum. [2] Further, Plaintiff argues that the claim against Hartford should also be [*1013] remanded because "[h]aving two separate forums for [this] case when the factual background is the same for all three claims leads to judicial inefficiency and exposes the parties to the possibility of inconsistent results." [3]

Remand of the action is inappropriate where, as here, the action has been properly removed to this Court based on diversity. See RK Dixon Co. v. Dealer Mktg. Servs., Inc., 284 F. Supp. 2d 1204, 1213 (S.D. Iowa 2003); see also Buchner v. FDIC, 981 F.2d 816, 817 (5th Cir. 1993) (noting that a court does not have discretionary authority to remand a case over which it has subject matter jurisdiction). Furthermore, and as noted by Plaintiff, piecemeal remand of certain claims is inappropriate when removal jurisdiction is based on diversity. See RK Dixon Co., 284 F. Supp. 2d at 1212-13 ("[A] federal court cannot resort to partial remand of an action that is properly before the court on diversity jurisdiction."); Bristol-Myers Squibb Co. v. Safety Nat'l Cas. Corp., 43 F. Supp. 2d 734, 743-44 (E.D. Tex. 1999). Therefore, because the suit was properly [**8] removed under the Court's diversity jurisdiction, the Court finds it must deny Plaintiff's motion to remand on this

basis.

Plaintiff's second argument for remand is based on Hartford's delayed notice of removal to the state court. The timeliness of filing a notice of removal is governed by 28 U.S.C. § 1446, which provides that a defendant must file a notice of removal with the district court within 30 days after the defendant's receipt of the initial complaint. See § 1446(a), (b)(1). Section 1446(d) provides that promptly after filing the notice of removal with the district court, the defendant must file a copy of the notice with the state court. Filing the a copy of the notice with the state court effects the removal. § 1446(d).

Here, Defendant Hartford received a copy of the summons and petition on August 16, 2011 and filed its notice of removal in this Court on September 8, 2011. Accordingly, Hartford complied with § 1446(a) and (b)(1). However, Defendant Hartford did not file a copy of the notice of removal with the state court until November 14, 2011. [4] Plaintiff argues that, based on the holding of Anthony v. Runyon, 76 F.3d 210 (8th Cir. 1996), Hartford's removal was invalid because [**9] it did not fulfill all requirements necessary to effect removal.

In Anthony, the U.S. Court of Appeals for the Eighth Circuit addressed the issue of whether a district court should consider an amended petition that was filed in state court after the defendant had already filed a notice of removal in federal district court. 76 F.3d at 213. The Anthony plaintiffs filed their amended petition in state court after the defendant filed a notice of removal in federal court but before the defendant filed a copy of the notice with the state court. Id. The court of appeals held that the district court should have considered the amended petition, stating "removal is effected when the notice of removal is filed with the state court." Id. at 214. Plaintiff argues that because removal was not effected until more than 30 days after

---

[2] In their stipulated motions to remand, Plaintiff and Stonebridge "agree that the claims against defendant Stonebridge should be remanded to state court" and Plaintiff and Sears agree that the "Court may remand to state court the claims against Sears." The parties' agreements regarding remand [**7] are not binding on this Court.

[3] Plaintiff also notes that while the claims against the defendants are based on separate contracts, a similar issue must be decided in all three claims: whether an accident caused Ms. Bohanna's death. Plaintiff states that he will present the same evidence and experts to prove his case against all three defendants.

[4] Hartford states that its failure to file the notice sooner was due to clerical inadvertence.

Hartford was served, the removal was not properly effected. However, § 1446 does not state that removal must be effected within 30 days; it states that the defendant must file a notice of removal with the district court [*1014] within 30 days. Accordingly, the Court finds that the holding [**10] of Anthony does not render the removal invalid due to Defendant's failure to file notice with the state court within 30 days.

The only statutory time limit regarding filing notice with the state court is that it must be done promptly after the filing of the notice with the district court. § 1446(d); see also Macklin v. Flexi USA, Inc., No. 07-746, 2007 WL 2360130, at *1 (E.D. Mo. Aug. 14, 2007). Plaintiff also argues that Hartford's notice to the state court was not sufficiently prompt. As previously stated, Hartford filed its notice of removal in this Court on September 8, 2011 and filed a copy of the notice of the removal with the state court on November 14, 2011. By the Court's estimation, 67 calendar days elapsed between the filing of the notices. [5]

The Court finds that Hartford's delay in filing a copy of the notice of removal with state court does not warrant remand in this case. Other courts have decided not to remand where a similar day resulted. See, e.g., Delgado v. Bank of Am. Corp., No. 09-1638, 2009 U.S. Dist. LEXIS 114220, 2009 WL 4163525, at * 8-9 (E.D. Cal. Nov. 23, 2009) [**11] (the defendants filed a copy of their notice of removal with state court 56 days after they filed the notice in federal court). Further, no significant action was taken in state court during the 67-day time period such that either party has been adversely affected by the delay. See Ynoa v. Kutner, No. 10-5398, 2011 U.S. Dist. LEXIS 49514, 2011 WL 1796320, at *2-3 (S.D.N.Y. May 5, 2011) (denying remand and noting that the court was not aware of any action taken by the state court during the delay and plaintiff did not claim that she

suffered any prejudice due to the delay).

Plaintiff states that a case management conference was scheduled for November 14, 2011, however he does not state that any action was taken by the state court on that date. In fact, a review of the docket entries in the state court case reveals that the case management conference was continued to a later date. The conference never occurred because, by the later date, Hartford had filed its notice of removal with the state court. Therefore, under the circumstances of this case, the Court finds that Hartford's filing of the notice with the state court satisfied the statutory requirement.

Based on the foregoing reasons, the Court finds that it has [**12] jurisdiction over this action and remand is not appropriate.

## III. DISMISSAL, LEAVE TO AMEND AND JOINDER OF A NECESSARY PARTY

Defendant Hartford has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The basis for Hartford's motion is as follows. Plaintiff alleges in his petition that the insurance policies issued by Hartford insured the life of Ms. Bohanna and provided accidental death benefits. Plaintiff also alleges in his petition that Hartford has refused to pay insurance benefits and therefore has failed to meet its contractual obligations. Hartford maintains that Plaintiff failed to state a claim because he did not allege that Ms. Bohanna's death resulted from an accidental death or injury. Defendant Sears makes the same argument in its motion to dismiss. [6] In response to the motions to dismiss, Plaintiff filed a motion for leave to file an amended [*1015] complaint. The Court finds that the defendants' arguments regarding dismissal are rendered moot

---

[5] Plaintiff repeatedly asserts that 96 days elapsed between the two filings. The Court is unsure how Plaintiff arrived at that number.

[6] As discussed below, Sears makes an additional argument in its motion to dismiss and/or stay regarding Plaintiff's [**13] failure to join a necessary party.

848 F. Supp. 2d 1009, *1015; 2012 U.S. Dist. LEXIS 54182, **13

by Plaintiff's motion for leave to amend.

In Plaintiff's proposed amended complaint, attached to his motion for leave to amend, Plaintiff specifically alleges that Ms. Bohanna passed away as a direct result of a fall, and that her passing triggered the defendants' obligations to pay benefits under the applicable policies. Leave to amend shall be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "Unless there is a good reason for denial, 'such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.'" Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004) (internal citations omitted). A motion for leave to amend should be denied on the basis of futility where the amended complaint could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Zutz v. Nelson, 601 F.3d 842, 850-51 (8th Cir. 2010).

Hartford has opposed Plaintiff's motion to amend on the basis that the amendment is futile. The sole basis for Hartford's opposition to amend is that the proposed amended complaint does not [**14] include a necessary party. Sears also raised this argument in its motion to dismiss and/or stay. Although the Court agrees that joinder of an additional party is required, see infra, the Court finds that this is not a basis to deny Plaintiff's motion for leave to amend on the basis of futility. Accordingly, Plaintiff is granted leave to amend and the 12(b)(6) motions to dismiss are denied.

Finally, both Hartford and Sears argue that James Bohanna, Plaintiff's brother, is a necessary party to this action under Federal Rule of Civil Procedure 19.

> A necessary party is one whose presence in the lawsuit is required because that party's absence would impair the Court's ability to accord complete relief between a plaintiff and a defendant, or the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

U.S. Bank Natl' Ass'n ND v. Elender Escrow, Inc., No. 11-123, 2011 U.S. Dist. LEXIS 134690, 2011 WL 5857029, at *5 (E.D. Ark. Nov. 21, 2011) [**15] (quoting Fed. R. Civ. P. 19(a)). Hartford and Sears argue that the Court cannot accord complete relief between the parties if James is absent [7] and James' absence leaves Hartford and Sears subject to a substantial risk of incurring double or otherwise inconsistent obligations. [8]

The Hartford insurance policies and the Sears insurance policy provide that if the insured—Ms. Bohanna—does not inform the insurance companies otherwise, a standard beneficiary designation applies. According to the policies, the standard beneficiary designation requires that the insurance companies pay the benefits to the living spouse, and if none, then in equal shares to the living children. Plaintiff has filed with Sears an Affidavit of Surviving Children, which lists Plaintiff and James Bohanna as Ms. Bohanna's surviving children. Plaintiff has not contested that the standard beneficiary designation applies to the Hartford and Sears policies, Ms. Bohanna does not have a [*1016] living spouse and James is a surviving child of Ms. Bohanna.

The Court finds that James is a necessary party because, without him, Hartford and Sears are subject to a substantial [**16] risk of incurring inconsistent obligations. An inconsistent obligation occurs "when a party is unable to comply with one

---

[7] See Fed. R. Civ. P. 19(a)(1)(A).

[8] See Fed. R. Civ. P. 19(a)(1)(B)(ii).

848 F. Supp. 2d 1009, *1016; 2012 U.S. Dist. LEXIS 54182, **16

court's order without breaching another court's order concerning the same incident." Sykes v. Hengel, 220 F.R.D. 593, 598 (S.D. Iowa 2004) (quoting Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998)); see also Green v. Nationscredit Fin. Servs., Corp., No.03-639, 2005 U.S. Dist. LEXIS 33467, 2005 WL 1005992, at * 4 (W.D. Mo. Mar. 31, 2005).

If James is not joined in this action, he may bring a lawsuit in a different court in an attempt to receive the insurance benefits under the same policies at issue here. That court would have to make the same inquiry as this Court will: whether Ms. Bohanna's death is covered by the applicable insurance policies. If that court were to find differently than this Court, the defendants would incur inconsistent obligations under the same insurance policies regarding the same incident. One court may order the defendants to pay benefits under their policies, while the other court may order them not to. Therefore, the Court finds that James' absence exposes the defendants to a substantial risk of incurring inconsistent obligations and he is a necessary [**17] party under Rule 19(a)(1)(B)(ii). See Belcher ex rel. Belcher v. Prudential Ins. Co. of Am., 158 F. Supp. 2d 777, 779-80 (S.D. Ohio 2001) (noting that "[a]n absent claimant to a limited fund, such as the proceeds of an insurance policy, is ordinarily considered to be an indispensable party to litigation"); cf. Mueller v. RadioShack Corp., No. 11-653, 2011 U.S. Dist. LEXIS 148802, 2011 WL 6826421, at *4 (D. Minn. Dec. 28, 2011) (finding that the defendant was not at a substantial risk for incurring inconsistent obligations because "[u]nder no circumstances will [the defendant] be ordered by one court to do something, and then be ordered by another court *not* to do the same thing").

Sears has requested that the Court either dismiss this action due to James' absence or stay the proceedings until James is joined. The Court finds that dismissal at this juncture is not appropriate. Rule 19(a) provides that a necessary party who is subject to service of process and whose joinder will not deprive the Court of subject matter jurisdiction must be joined. If that party cannot be joined, the Court should consider the factors set forth in Rule 19(b) to determine whether the action should continue without that party or be dismissed. [**18] Estate of McFarlin v. City of Storm Lake, 277 F.R.D. 384, 389-90 (N.D. Iowa. 2011). Neither party has indicated that James is not subject to service of process or that his joinder would deprive the Court of subject matter jurisdiction. Accordingly, dismissal is not appropriate. Instead, the Court finds that this matter should be stayed pending joinder of James Bohanna. The current Scheduling and Trial Order (Doc. 21) is vacated. The Court ORDERS that James Bohanna be joined within thirty (30) days. Within twenty-one (21) days from his joinder, the parties shall file a new joint proposed scheduling order.

## IV. CONCLUSION

Based on the foregoing reasons, it is hereby ORDERED that:

(1) Defendant Stonebridge Life Insurance Company and Plaintiff's Stipulated Motion to Remand (Doc. 15) is DENIED;

(2) Joint Stipulation to Remand Between Plaintiff Thomas Bohanna and Defendant Sears Life Insurance Company (Doc. 17) is DENIED;

 [*1017] (3) Plaintiff's Motion to Remand (Doc. 19) is DENIED;

(4) Defendant Hartford Life and Accident Insurance Company's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion to Remand (Doc. 37) is GRANTED;

(5) Motion to Dismiss by Defendant Hartford Life and Accident [**19] Insurance Company (Doc. 22) is DENIED;

(6) Motion to Dismiss and/or Stay by Sears Life Insurance Company (Doc. 28) is

848 F. Supp. 2d 1009, *1017; 2012 U.S. Dist. LEXIS 54182, **19

GRANTED IN PART and DENIED IN PART;

(7) Plaintiff's Motion for Leave to Amend (Doc. 31) is GRANTED and Plaintiff shall file his amended complaint;

(8) Plaintiff's Motion to Remand for Lack of Notice (Doc. 44) is DENIED;

(9) Plaintiff's Amended Motion to Remand for Lack of Notice (Doc. 45) is DENIED;

(10) Plaintiff's Motion to Strike Acknowledgment of Filing of Notice of Removal (Doc. 47) is DENIED;

(11) Defendant Hartford Life and Accident Insurance Company's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Second Motion to Remand (Doc. 52) is GRANTED;

(12) The current Scheduling and Trial Order (Doc. 21) is VACATED;

(13) This action is STAYED pending the joinder of James Bohanna;

(14) James Bohanna shall be joined within thirty (30) days; and

(15) Within twenty-one (21) days from James Bohanna's joinder, the parties shall file a new joint proposed scheduling order.

SO ORDERED.

Date: <u>March 16, 2012</u>

/s/ Dean Whipple

Dean Whipple

United States District Judge

---

**End of Document**

# Lee v. Smith & Wesson Corp.

United States District Court for the Northern District of Ohio, Eastern Division

October 24, 2011, Decided; October 24, 2011, Filed

Case No. 1:11-CV-1940

**Reporter**

2011 U.S. Dist. LEXIS 122906 *; 2011 WL 5507192

MARK D. LEE, et al., Plaintiffs, vs. SMITH & WESSON CORP., Defendants.

**Subsequent History:** Motion granted by Lee v. Smith & Wesson Corp., 2013 U.S. Dist. LEXIS 9048 (N.D. Ohio, Jan. 23, 2013)

**Counsel:**  [*1] For Mark D Lee, Cynthia A Lee, Plaintiffs: Scott D. Perlmuter, Thomas D. Robenalt, LEAD ATTORNEYS, Novak, Robenalt & Pavlik, Cleveland, OH.

For Smith & Wesson Corp., Defendant: Michelle L. Gorman, LEAD ATTORNEY, Pietragallo, Bosick & Gordon - Steubenville, Steubenville, OH; Clem C. Trischler, Jr., Pietragallo, Bosick & Gordon - Pittsburgh, Pittsburgh, PA.

**Judges:** Dan Aaron Polster, United States District Judge.

**Opinion by:** Dan Aaron Polster

## Opinion

### MEMORANDUM OF OPINION AND ORDER

Two motions are pending before the Court: Plaintiffs' Motion for Remand (**Doc. # 8**); and Defendant's Motion for Costs and Stay (**Doc. # 5**) pursuant to Rule 41(d) of the Federal Rules of Civil Procedure.

### I. Procedural Posture

On November 4, 2008, Plaintiffs filed a products liability action against Defendant in the Court of Common Pleas of Richland County, Ohio. The complaint alleged Mark D. Lee was injured when he fired a revolver manufactured by Smith & Wesson: the cylinder of the gun swung open and the blast from the shot knocked off Lee's safety glasses and caused permanent injuries to his face, including his nose and one eye. (Doc. # 5-2).

On August 6, 2010, in anticipation of trial, Defendant filed a motion to strike and preclude the testimony [*2] of Plaintiff's expert witness, Richard Ernest, who was expected to testify that the revolver was defective. (Doc. # 5-4; 5-5). Plaintiffs did not respond to Defendant's motion. Instead, on August 16, 2010, three weeks before trial, they hired new counsel and filed a voluntary dismissal without prejudice pursuant to Rule 41(A) of the Ohio Rules of Civil Procedure. (Doc. # 5-6; 5-7).

On August 15, 2011, apparently one day before the expiration of the statute of limitations, Plaintiffs re-filed the products liability action against Defendant in the Court of Common Pleas of Cuyahoga County, again alleging Lee was injured as a result of a defect in the revolver. (Doc. # 1-1). Defendant was served with the summons and complaint on August 29. (Doc. # 1, ¶ 13). Defendant then removed the case to this Court on September 14 on the basis of diversity jurisdiction, under 28 U.S.C. § 1332. (Doc. # 1).[1] Defendant filed a copy of the notice of removal with the Cuyahoga County court on October 7. (Doc. # 10-2).

---

[1] The original action could not be removed to federal court because diversity of citizenship was lacking. The re-filed case does not name the defendants who defeated diversity in the original [*3] action.

## II. Plaintiffs' Motion for Remand

Plaintiffs' motion for remand was filed in this Court on October 6. (Doc. # 8). The basis of the motion is that Defendant failed to fulfill the procedural requirements for removal by not promptly filing a copy of the notice of removal with the Cuyahoga County court. Defendant did file the notice of removal with the Cuyahoga County court, albeit on October 7, one day after Plaintiffs filed their motion for remand. (Doc. # 10).

After filing a notice of removal in federal court, a defendant must "[p]romptly...give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court...." 28 U.S.C. § 1446(d). The state court's jurisdiction is terminated when it receives a copy of the notice of removal. Schliewe v. Toro, 138 Fed. Appx. 715, 720 (6th Cir. 2005). Until a defendant notifies the state court of removal, the defendant creates concurrent jurisdiction over the case in both the state and federal courts. Id.

In this case, Defendant filed a copy of the notice of removal with the Cuyahoga County court 23 days after filing a notice of removal in this Court. The issue, then, is whether 23 days constitutes [*4] prompt notification under 28 U.S.C. § 1446(d).

Several courts have addressed the issue of what is prompt notification. One court found that a 22-day delay did not violate the prompt filing requirement. Nixon v. Wheatley, 368 F. Supp. 2d 635, 640 (E.D. Tex. 2005). Another found that a delay of one month was satisfactory. Calderon v. Pathmark Stores, Inc., 101 F. Supp. 2d 246, 246—47 (S.D.N.Y. 2000). See also Patterson v. State Farm Mut. Auto. Ins. Co., 2009 U.S. Dist. LEXIS 43192 (N.D. Okla. 2009) (declining to remand where defendant's delay was 30 days). Even a delay of as much as six months did not require remand. Whitney v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 17437 (D. Me. 2004). On the other hand,

Judge O'Malley recently found that a delay of eight months *did* require remand. Mlotek v. Mlotek, 2011 U.S. Dist. LEXIS 13828 (N.D. Ohio 2011).

This case clearly falls within the range of acceptable delay. The Court therefore finds that a delay of 23 days between filing a notice of removal in federal court and filing a copy of that notice with the state court is prompt enough to satisfy the requirements under 28 U.S.C. § 1446(d).

Even though Plaintiffs acknowledge that courts have [*5] held that a delay of as much as one month does not necessitate remand, Plaintiffs nonetheless argue, "in a case like this, where Defendant has aggressively sought payment of costs from Plaintiffs and dismissal of this case, while still requiring Plaintiffs to fight this case on two fronts due to their own procedural failures, the delay and failure of Defendant does warrant remand." (Doc. # 8, at 5).

The question of whether notice is prompt has nothing to do with what motions the defendant decides to file in federal court and whether the defendant decides to pursue those motions aggressively or timidly. Thus, Defendant's decision to seek payment of costs and a dismissal of the case is irrelevant. Furthermore, the argument that remand is warranted because Plaintiffs had to fight this case on two fronts during the 23-day delay is without merit. Although Plaintiffs took action in state court during the 23-day period, by filing a motion for default judgment, the state court's docket reveals that the court itself took no action. (See Case No. CV-11-762052, Court of Common Pleas of Cuyahoga County).

## III. Defendant's Motion for Costs and Stay

Pursuant to Rule 41(d) of the Federal Rules of Civil Procedure, [*6] Defendant moves for an order requiring Plaintiffs to pay $10,342.90 in costs for the amount spent to defend the action that Plaintiffs previously filed and dismissed. Defendant also

requests a stay of the proceedings until those costs are paid. (Doc. # 5).

Rule 41(d) provides:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied.

Rule 41(d) is intended to prevent vexatious litigation and forum shopping, especially by plaintiffs who, after suffering setbacks in one court, dismiss the case in order to try their luck somewhere else. Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 874 (6th Cir. 2000) (internal quotations and citations omitted). It is meant to prevent attempts to gain a tactical advantage by dismissing and refiling the suit. Id. The decision to award costs is within the discretion of the Court. Id.

Defendant avers that Plaintiffs dismissed their original action to gain a tactical advantage. (Doc. # 5-1, at 4). Defendant points [*7] out that the voluntary dismissal came three weeks before trial and ten days after Defendant filed its motion to preclude the testimony of Plaintiffs' only expert witness, Richard Ernest. (Id.). Defendant concludes that the "only reasonable inference that can be drawn here is that Plaintiffs dismissed voluntarily to avoid an adverse ruling on [Defendant's] Motion to Preclude the Testimony of Richard Ernest. This is so because, if the state court had granted [Defendant's] Motion, the Plaintiffs' case was over—and they knew it." (Id.). While Plaintiffs claim they had no vexatious intent and were not forum shopping, Plaintiffs admit that their dismissal was "necessitated by Defendant's motion to strike and the change of counsel one month prior to trial." (Doc. # 9, at 6).

The Court agrees with Defendant and finds that Plaintiffs dismissed the original case to gain a tactical advantage. The timing of Plaintiffs'

decision to file the dismissal is significant. It is one thing to dismiss a case early on, before the parties have spent a lot of money litigating; it is quite another to dismiss the case almost three years after filing the complaint and three weeks before trial. Moreover, as Plaintiffs [*8] themselves readily admit, the impetus for the dismissal was Defendant's motion to strike their expert, not some event external to the litigation over which Plaintiffs had no control, such as a serious medical event. Also of significance is the fact that Plaintiffs got rid of their original expert, Richard Ernest, and retained a new one for this case—one who has a different opinion regarding the revolver's defect. Furthermore, contrary to Plaintiffs' suggestion, the fact that they retained new counsel does not count in their favor—at least not when the change happens so late in the game, so close to trial.

The Court finds that these actions evince an attempt to avoid an adverse ruling and to wipe the slate clean. See Rogers, 230 F.3d at 874 (upholding a district court's decision to award costs when there was evidence of at least some attempt to wipe the slate clean after an initial setback). Accordingly, the Court will award costs to Defendant.

The question that remains is whether Plaintiffs must pay all or only part of the requested $10,342.90. The $10,342.90 consist of the following items:

• Richard Ernest deposition attendance fee, $3000

• Transcript of Richard Ernest's deposition, $1,306.80

• [*9] Court reporter fee for deposition of Richard Ernest, $258.69

• Transcript of Mark E. Lee's deposition, $861.00

• Court reporter fee for deposition of Mark E. Lee, $436.75

• Other deposition court reporter fees, $931.25

• May 3, 2010 Hearing Transcript, $111.50

• Linda White deposition mileage and witness fee, $38.79

• Linda A. Velandra deposition mileage and witness fee, $67.40

• Thomas Temple deposition mileage and witness fee, $107.50

• James Adams deposition mileage and witness fee, $107.50

• Fee for Independent Medical Examination of Plaintiff Mark D. Lee, $1,200

• Cost of photocopies, $1,404.03

• FedEx fees, $461.69

• Certificate of Good Standing for James F. Marrion, $25.00

• Certificate of Good Standing for Clem C. Trischler, $25.00

These are the costs as reflected in Defendant's Affidavit in Support of the motion to recover costs, Exhibit H. (Doc. # 5-9). Each item is supported by documentation, such as a receipt or invoice. (See Doc. # 5-10 through # 5-25). The Court has examined each item and its supporting documentation.

An award of costs under Rule 41(d) is limited to expenses incurred in the first action that will not be useful in the second action. See Rogers, 230 F.3d at 873 (affirming [*10] the district court's decision to exclude from an award of costs under Rule 41(d) those fees that remained of benefit in the second case); Powers v. Chase Bankcard Services, Inc., 2010 U.S. Dist. LEXIS 131974, 2010 WL 4982148 (S.D. Ohio 2010) (disallowing costs that would necessarily be incurred regardless of the dismissal and re-filing of the action because that would not decrease the deterrent effect of Rule 41 and would result in a windfall to the defendant). Plaintiffs

object to all of the items—except for the two Certificates of Good Standing—because, according to Plaintiffs, the expenses sought by Defendant would be required regardless of the dismissal and refiling. (Doc. # 9, at 8—10).

Specifically, Plaintiffs argue that the costs related to Plaintiffs' first expert, Richard Ernest, is useful in the present action, as demonstrated by the fact that "Defendant is utilizing Mr. Ernest's deposition as one of the grounds for dismissal in their recently filed motion to dismiss." (Id. at 8). Plaintiffs mischaracterize Defendant's motion to dismiss. Defendant does not use Ernest's deposition as a grounds for dismissal. In its motion to dismiss, Defendant mentions its motion to strike and preclude the testimony of [*11] Ernest, which was filed in the first action and was the catalyst for Plaintiffs' dismissal. (Doc. # 4-1, at 2). That motion to strike in turn references Ernest's deposition. (Id.). But the only reason Defendant mentions the prior motion to strike is for the purpose of summarizing the procedural history of this case; Defendant devotes but one sentence to the motion to strike. (Id.). Contrary to Plaintiffs' assertion, the deposition of Ernest is *not* used by Defendant as a grounds for dismissal.

The Court finds that Ernest's testimony will be of no use in the present action, especially in light of the fact that Plaintiffs have hired a new expert. Accordingly, the expenses associated with the deposition of Ernest shall be awarded to Defendant. Those expenses include Ernest's deposition attendance fee, $3000.00; transcript of Ernest's deposition, $1,306.80; and court reporter fee for Ernest's deposition, $258.69. The Court also finds—and Plaintiffs do not dispute—that the two certificates of good standing will be of no use in the present action. Defendant is therefore entitled to $50 for these certificates. The total for these expenses is $4614.49.

The remaining costs shall not be awarded [*12] to Defendant. Defendant does not adequately explain how the remaining costs will be of no use in the

present action. Defendant does state that it "will be required to pay for another Independent Medical Exam of Plaintiff Mark Lee, as well as depose additional witnesses whose testimony may be relevant due to Plaintiffs' stated intention to proceed on a new—and different—theory of defect." (Doc. # 11, at 9). Even if Defendant decides to pay for a new medical exam of Plaintiff Lee, it does not follow that the previous medical exam is now useless. Likewise, the fact that new witnesses may be needed in the present action does not mean that expenses paid for the earlier witnesses' deposition testimony in the earlier action were for naught. In other words, it is possible that these costs would have been incurred regardless of the dismissal and re-filing, and Defendant has not proved otherwise.

The last items to consider are Defendant's FedEx fees and photocopy fees. Although Defendant has provided an invoice for fees paid to FedEx between December 10, 2008 and August 5, 2010, there is no information regarding the purpose of each FedEx transaction, and Defendant has not explained in any of [*13] its briefs the nature of those transactions. Similarly, the photocopy fees invoice is nondescript. Defendant avers in its Reply brief that Defendant will "be required to incur additional expenses associated with the filing, responding to, and copying of an entirely new set of pleadings and discovery requests." (Id.). The Court cannot, from the photocopy invoice, determine the purpose of the photocopies and whether or not they will be useful in the present action. Accordingly, the costs for the FedEx shipments and the photocopies will not be awarded to Defendant.

## IV. Conclusion

Accordingly, the Court **DENIES** Plaintiffs' Motion for Remand (**Doc. # 8**) and **GRANTS IN PART** Defendant's Motion for Costs (**Doc. # 5**) in the amount of $4614.49. The Court further **ORDERS** Plaintiffs to pay costs to Defendant by February 1,

2012, or show cause why the case should not be dismissed with prejudice for want of prosecution. The Court will **GRANT** Defendant's Motion to Stay the proceedings (**Doc. # 5**) until costs are paid.

**IT IS SO ORDERED**.

*/s/ Dan Aaron Polster 10/24/11*

**Dan Aaron Polster**

**United States District Judge**

---

End of Document

## [Tube City IMS Corp. v. Allianz Global Risks US Ins. Co.](#)

United States District Court for the Western District of Pennsylvania

November 3, 2014, Decided; November 3, 2014, Filed

Civil Action No. 14-1245

**Reporter**

2014 U.S. Dist. LEXIS 165654 *

TUBE CITY IMS CORPORATION, Plaintiff, vs ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, Defendant.

**Subsequent History:** Adopted by, Motion denied by [Tube City IMS Corp. v. Allianz Global Risks US Ins. Co., 2014 U.S. Dist. LEXIS 164495 (W.D. Pa., Nov. 25, 2014)](#)

Magistrate's recommendation at [Tube City Ims Corp. v. Allianz Global Risks Us Ins. Co., 2014 U.S. Dist. LEXIS 180271 (W.D. Pa., Dec. 1, 2014)](#)

**Counsel:** [*1] For TUBE CITY IMS CORPORATION, Plaintiff: Jeanette H. Ho, Mark Gordon, LEAD ATTORNEYS, Pietragallo, Bosick & Gordon, Pittsburgh, PA.

For ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, Defendant: James M. Hoey, Thomas S. Gozdziak, LEAD ATTORNEYS, PRO HAC VICE, Clausen, Miller, Chicago, IL; Paul K. Geer, LEAD ATTORNEY, DiBella, Geer, McAllister & Best, Pittsburgh, PA; Tara L. Maczuzak, LEAD ATTORNEY, DiBella, Geer, McAllister & Best, P.C., Pittsburgh, PA.

**Judges:** ROBERT C. MITCHELL, United States Magistrate Judge. Judge Cercone.

**Opinion by:** ROBERT C. MITCHELL

## Opinion

## REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the motion to remand filed on behalf of the plaintiff (ECF No. 3) be denied.

II. Report

Plaintiff, Tube City IMS Corporation ("TCIMS"), brought an action in the Court of Common Pleas of Allegheny County, Pennsylvania against Defendant, Allianz Global Risks US Insurance Company ("Allianz"), seeking a declaration that Allianz owed coverage to TCIMS under its insurance policy based on losses that occurred when a bell rod that was part of a two-bell top charging system that was located at the entrance to the blast furnace at AK Steel (with which TCIMS had a contract to perform services) [*2] fractured and fell into the blast furnace, thereby shutting down the facility. TCIMS also alleged that Allianz's denial of coverage constituted a breach of contract and bad faith, or in the alternative, that if the policy did not apply under these circumstances, that Allianz had negligently and/or fraudulently and intentionally misrepresented the scope of the policy's coverage to TCIMS.

On September 12, 2014, Allianz removed the action to this Court based upon diversity of citizenship jurisdiction. The parties then stipulated that Allianz's answer to the Complaint would be due on or before October 20, 2014. (ECF No. 2.)

However, on October 7, 2014, TCIMS filed the pending motion to remand, in which it argues that Allianz failed to follow proper removal procedures and also that this Court should abstain from exercising jurisdiction over this case on the ground that it represents an "all too common case of an

insurance company coming to federal court, under diversity jurisdiction, to receive declarations on purely state law matters." Reifer v. Westport Ins. Corp., 751 F.3d 129, 141 (3d Cir. 2014). TCIMS argues that, under the "heart of the action" test, the outcome of the coercive claims (the breach of contract, bad faith and misrepresentation claims [*3] in this instance) hinges upon the outcome of the declaratory judgment claim, and therefore the Court can and should utilize its discretion to decline jurisdiction over these state law matters and remand them to the Court of Common Pleas. Allianz responds that it has cured the minor procedural defect and that the Court should not abstain from exercising jurisdiction based upon the Colorado River doctrine and that, even applying the "heart of the action" test, the case also raises claims of bad faith, negligent misrepresentation and fraudulent/intentional misrepresentation, and is therefore seeking legal and not merely declaratory relief.

Facts

TCIMS purchased a policy from Allianz providing boiler and machinery coverage for "accidents" occurring at an "insured location" during the period October 30, 2012 to October 30, 2013. (Compl. ¶¶ 5, 10.)[1] The "time element" section of the policy extended coverage for up to 180 days to commissions, profits and royalties lost by TCIMS as a result of an accident which it was unable to make up within a reasonable period of time. (Compl. ¶¶ 13-19.)

TCIMS had contracts to perform various services for AK Steel at its facility [*4] in Middleton, Ohio, which is within the territory of the policy. (Compl. ¶¶ 20-23.) On June 22, 2013, a bell rod which was part of a two-bell top charging system at the blast furnace at AK Steel's facility suddenly fractured and the bell rod and one of the bells fell into the blast furnace. (Compl. ¶¶ 26-32.) As a result of this accident, the blast furnace was shut down for a period of time to repair and/or replace the bell rod and the bell, and the flow of goods to TCIMS was interrupted, TCIMS was prevented from producing goods and/or services to AK Steel and AK Steel was prevented from supplying goods and/or services to TCIMS. TCIMS lost sales and was unable to make up lost production within a reasonable period of time. (Compl. ¶¶ 33-41.) Therefore, it sought coverage from Allianz under the policy.

Allianz denied the claim for four different reasons, one of which was that the bell rod was part of the furnace and thus excluded by the furnace exclusion. (Compl. ¶¶ 47-48.) Even after TCIMS provided Allianz with a report from a world-renowned expert on blast furnaces stating that the two-bell top charging system was not part of the furnace, Allianz continued to deny the claim. (Compl. [*5] ¶¶ 50-53.) However, TCIMS states that, before it purchased the policy, its brokers questioned Arturo Alvarez, Executive Underwriter for Allianz, about the scope of the exclusion and Alvarez wrote that "precipitators" were covered, but that "the oven box itself, refractory and foundation" were not. TCIMS submits that it relied on this representation to purchase the policy and that the bell rod and charging system are not part of the oven box, refractory or foundation. (Compl. ¶¶ 55-57.)

Procedural History

Plaintiff filed this action in the Court of Common Pleas of Allegheny County, Pennsylvania on July 22, 2014 and it was docketed at No. GD 14-011533. Count I seeks a declaratory judgment that Defendant owes coverage to Plaintiff for the losses it sustained as a result of the accident. Count II alleges that Defendant's refusal to provide coverage under the policy constituted a breach of contract. Count III alleges that Defendant acted in bad faith in violation of 42 Pa. C.S. § 8371. Count IV alleges

---

[1] Notice of Removal (ECF No. 1) Ex. 1.

that Defendant negligently misrepresented the scope of the policy's coverage, and Count V alleges that it did so intentionally or fraudulently.

On September 12, 2014, Defendant filed a Notice of Removal with [*6] this Court based upon diversity of citizenship in that: TCIMS is a Delaware corporation with its principal place of business in Pennsylvania; Allianz is an Illinois corporation with its principal place of business in Illinois; and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. (Notice of Removal ¶¶ 6-8.) On October 7, 2014, Plaintiff filed a motion to remand (ECF No. 3). On October 28, 2014, Defendant filed its brief in opposition (ECF No. 18).[2]

Standard of Review

Defendant removed this action pursuant to 28 U.S.C. § 1441, which states that:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.... [*7]

28 U.S.C. § 1441(a). The Supreme Court has held that: "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress. These statutory procedures for removal are to be strictly construed." Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 33, 123 S. Ct. 366, 154 L. Ed. 2d 368 (2002) (citations omitted). The Court of

Appeals for the Third Circuit has held that "[t]he party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." Samuel-Bassett v. Kia Motors of America, Inc., 357 F.3d 392, 396 (3d Cir. 2004) (citation omitted). Thus, Allianz bears the burden of demonstrating that the removal of this action was proper in all respects, including the procedural process.

Notice to the Clerk

The removal statute provides that:

> Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

28 U.S.C. § 1446(d). Attached to Plaintiff's motion is a docket sheet from the Court of Common Pleas of Allegheny County, which reveals that, as of October 7, [*8] 2014, no copy of the notice of removal had been filed. (ECF No. 3 Ex. A.) Thus, it argues that "this Court never obtained jurisdiction over the case...." Carabello v. Williams Fund Private Equity Group, Inc., 2006 U.S. Dist. LEXIS 51097, 2006 WL 2092577, at *1 (E.D. Pa. July 25, 2006). This statement is wrong as a matter of law.

Rather, "federal jurisdiction commences when the defendant files the notice of removal with the district court, and filing the notice with the state clerk affects the state's jurisdiction rather than federal jurisdiction." Parker v. Malone, 2004 U.S. Dist. LEXIS 1096, 2004 WL 190430, at *2 (W.D. Va. Jan. 15, 2004). The Court of Appeals has held that notice to the state court is "necessary to terminate the state court's jurisdiction." Resolution Trust Co. v. Nernberg, 3 F.3d 62, 69 (3d Cir. 1993). "The purpose of filing a copy of the removal petition with the state court is to inform the state

---

[2] Allianz has filed an Answer to the Complaint with affirmative defenses to Counts I to III (ECF No. 11) and a partial motion to dismiss Counts IV and V (ECF No. 9). The motion to remand must be resolved first, however, because it involves the Court's jurisdiction over the case.

district judge that he can no longer proceed with the case until the federal court decides whether it will retain jurisdiction or not." Nixon v. Wheatley, 368 F. Supp. 2d 635, 640 (E.D. Tex. 2005) (citation omitted).

As courts have observed, "failure of notice to the state court is a procedural defect that does not defeat federal jurisdiction." Peterson v. BMI Refractories, 124 F.3d 1386, 1395 (11th Cir. 1997). Dukes v. South Carolina Ins. Co., 770 F.2d 545, 547 (5th Cir. 1985); Boyce v. St. Paul Fire & Marine Ins. Co., 1993 U.S. Dist. LEXIS 728, 1993 WL 21210, at *3 (E.D. Pa. Jan. 28, 1993). Thus, it is appropriate to state that, as of September 12, 2014, this Court and the Court of Common Pleas exercised concurrent jurisdiction over the case.

A defect in removal procedure can serve as the basis for a motion to remand. In light of the technical nature [*9] of this defect and the purpose of the notice, however, courts have held that a defendant's act of promptly curing the defect is sufficient and denied motions to remand under these circumstances. See Faye v. High's of Baltimore, 541 F. Supp. 2d 752, 754 (D. Md. 2008); Bohanna v. Hartford Life & Accident Ins. Co., 848 F. Supp. 2d 1009, 1014 (W.D. Mo. 2012).

Counsel for Defendant explains that he left the country for ten days on September 12, 2014 and inadvertently failed to file a copy of the notice of removal with the clerk of the Court of Common Pleas of Allegheny County until October 7, 2014. (ECF No. 19 Ex. A.) See GD-14-011533, Doc. No. 7. The statute requires only that a notice of removal be filed "promptly" with the clerk of the state court, and courts have not agreed on the meaning of the word "promptly." Compare Calderon v. Pathmark Stores, 101 F. Supp. 2d 246, 247-48 (S.D.N.Y. 2000) (36 days was "relatively short" and harmless) and Parker, 2004 U.S. Dist. LEXIS 1096, 2004 WL 190430, at *2 (22 days thwarted no statutory purpose) with Doherty v. Goslin, 2002 U.S. Dist. LEXIS 15083, 2002 WL 32224695, at *2 (E.D. Pa.

July 26, 2002) (27 days with no evidence that defendant took steps to ensure that notice was properly filed represented a "casual" treatment of their obligation) and Alpena Power Co. v. Utility Workers Union of America, Local 286, 674 F. Supp. 1286, 1287-88 (E.D. Mich. 1987) (11 days is within the range of promptness). See Nernberg, 3 F.3d at 69 (stating in dicta that defendant who waited 34 days to file a notice with the state court was treating its obligation casually).

In this case, counsel has explained that notice was filed with the clerk within 25 days of the filing [*10] of the notice of removal in this Court and thus the notice was filed promptly. Moreover, Plaintiff's motion contends that Defendant did not file a notice with the clerk at all, but Defendant has cured the procedural defect. The state court docket sheet does not reflect that any activity took place between the filing of the complaint and the filing of the copy of the notice of removal. Plaintiff has not and cannot argue that it suffered any prejudice based on this delay in filing the copy with the clerk.[3] Plaintiff's motion to remand on this basis should be denied.

Abstention

Plaintiff argues that, because this case asserts a claim for a declaratory judgment, the Court has broad discretion to determine whether to keep or remand it and that remand is appropriate because the "heart of the action" is a mere request for a federal court to declare an insured's coverage under an insurance policy pursuant to state law. Defendant responds that the case is not a mere request for declaratory judgment and that, applying the appropriate factors, [*11] jurisdiction should be maintained.

The Court of Appeals has held that:

---

[3] Plaintiff was fully aware of the removal on the date it occurred, September 12, 2014, based on both first-class mail and a telephone conversation between counsel.

2014 U.S. Dist. LEXIS 165654, *11

Under the DJA, courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). This is an exception to the general rule that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush [v. Allstate Ins. Co.], 517 U.S. [706,] 716, 116 S. Ct. 1712, 135 L. Ed. 2d 1 [(1996)] (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

Reifer, 751 F.3d at 134-35. The court noted that, when a plaintiff files an action in state court seeking a declaratory judgment under state law, the removal of the action to federal court causes "the question of whether to exercise federal jurisdiction to adjudicate the controversy [to become] a procedural issue under federal law." Id. at 134 n.4.

In Reifer, the court concluded that the DJA applied because in reality Reifer was seeking a declaration that Russo (her former attorney, who had committed acts of malpractice) was covered by the policy. Russo's liability had already been determined in state court and damages had been awarded. She merely stood in Russo's [*12] shoes as his assignee regarding the policy coverage question.

In this case, by contrast, TCIMS seeks not only a declaratory judgment, but also monetary damages. It alleges claims of breach of contract, bad faith and negligent and intentional misrepresentation. And it seeks punitive damages, interest and costs of suit. Thus, it raises a "mixed claim" for declaratory and legal relief.

The Court of Appeals noted in Reifer that:

> We have never ruled on the legal standard a district court must apply when addressing whether it may decline jurisdiction when both declaratory and legal relief are claimed. See, e.g., Hartford Ins. Co. of S.E. v. [Stead], 848 F. Supp. 2d 506, 510 (M.D. Pa. 2012). Moreover, our sister circuits are "sharply divided" and advance four different standards. See, e.g., Perelman v. Perelman, 688 F. Supp. 2d 367, 374-75 [&] n. 3 (E.D. Pa. 2010) (analyzing circuit split). Our district courts have also embraced competing approaches. Compare id. at 367-77 (adopting "independent claim" test), with Hartford Ins. Co., 848 F. Supp. 2d at 512 (disagreeing with Perelman and adopting "heart of the action" test).

Id. at 135 n.5. The court observed that the defendant did not mention these competing approaches, nor did it urge the court which one to adopt. Moreover, the court concluded that it did not need to resolve the issue because the defendant [*13] was merely citing a praecipe for writ of summons in another suit and a civil cover sheet, neither of which provided enough information for it to determine that the district court was divested of its DJA discretion. Id.

Plaintiff argues that, under the "heart of the action" test, the outcome of the coercive claims for monetary damages hinges upon the outcome of the claim for declaratory relief. It contends that the scope of the policy is also relevant to determining whether Allianz's denial of its coverage request represented a breach of contract or bad faith, as well as whether Allianz misrepresented the scope of coverage available under the policy. Thus, it argues that this case is at its heart one for declaratory relief and that the Court should utilize its discretion and decline to exercise jurisdiction.

Plaintiff has not addressed the other tests, nor has it explained why the heart of the action test should apply. It contends that "this Court" has applied the

heart of the action test, but the case it relies upon, General Nutrition Corp. v. Charter Oak Fire Insurance Co., 2007 U.S. Dist. LEXIS 75775, 2007 WL 2998443 (W.D. Pa. Oct. 11, 2007), was decided by Judge Lancaster. The GNC case is not binding on other members of the Court.[4] Moreover, in that case, there was a pending state court action and here there [*14] is not. As the court held in Reifer, "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." 751 F.3d at 144. Plaintiff has not acknowledged, let alone discussed, this significant distinguishing factor.

Defendant argues that the approach following the Colorado River doctrine to hybrid claims hues most closely to the Supreme Court's admonition that district courts have a "strict duty" to exercise the jurisdiction provide them by Congress. Quackenbush, 517 U.S. at 716. It contends that applying the analysis from Brillhart (federal courts have discretion to decline to exercise jurisdiction over DJA claims, especially if the matter would better be handled in state court), as reaffirmed by Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) (Brillhart discretion still applies in purely declaratory judgment actions with parallel state proceedings, but the Court did not address the proper scope of discretion when parallel state proceedings did not exist), to Plaintiff's claims for legal relief would operate to undermine the line of precedent [*15] indicating that, absent parallel state proceedings, abstention is an extraordinary remedy that is not to be taken lightly.

Defendant further argues that this case is not a typical insurance coverage case, because Plaintiff also raises claims of bad faith and negligent and

intentional misrepresentation. Thus, even if the heart of the action test is applied, it maintains that the heart of this action is a claim for legal—rather than declaratory—relief.

It is not necessary for this Court to select which of the various tests to apply because, in this case, application of any test leads to the same result. Applying Colorado River, the Court would have no discretion to abstain, and applying a Brillhart/Wilton analysis, the absence of a parallel state court proceeding significantly militates in favor of exercising jurisdiction. Finally, with respect to the heart of the action test, Plaintiff has not cited a single case in which this test was applied when there were no parallel state court proceedings and the Court is unaware of any case applying the test in these circumstances. As noted in Reifer (which was solely a DJA case, in which a court has even more discretion to abstain from exercising [*16] jurisdiction than in a hybrid situation), "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." 751 F.3d at 144. Therefore, the Court should retain jurisdiction and deny Plaintiff's motion to remand this case to state court.

For these reasons, it is recommended that the motion to remand filed on behalf of the plaintiff (ECF No. 3) be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by November 17, 2014. Any party opposing the objections shall file a response by December 1, 2014. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

/s/ Robert C. Mitchell

ROBERT C. MITCHELL

United States Magistrate Judge

---

[4] Oddly, in referencing cases decided by "this Court," Plaintiff also cites ITT Industries, Inc. v. Pacific Employers Insurance Co., 427 F. Supp. 2d 552 (E.D. Pa. 2006), which was decided by Judge Robreno of the Eastern District.

2014 U.S. Dist. LEXIS 165654, *16

Dated: November 3, 2014

---

**End of Document**

## [Neurology & Pain Mgmt. Assocs., P.C. v. Bunin](#)

United States District Court for the Southern District of Indiana, Indianapolis Division

January 10, 2017, Decided; January 10, 2017, Filed

No. 1:16-cv-02856-LJM-MPB

**Reporter**

2017 U.S. Dist. LEXIS 3307 *; 2017 WL 82512

NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C., doing business as VANGUARD ELDERCARE, also known as VANGUARD ELDERCARE MEDICAL GROUP, Plaintiff, vs. ANTHONY BUNIN, and BIO-BEHAVIORAL CARE SOLUTIONS, LLC, Defendants.ANTHONY BUNIN, Counter Claimant, vs. NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C., Counter Defendant.

**Subsequent History:** Motion denied by, Judgment entered by [Neurology & Pain Mgmt. Assocs., P.C. v. Bunin, 2018 U.S. Dist. LEXIS 135896 (N.D. Ind., Aug. 13, 2018)](#)

**Prior History:** [Bio-Behavioral Care Solutions, Inc. v. Doctors Behavioral Hosp., LLC, 2016 U.S. Dist. LEXIS 139331 ( E.D. Mich., Sept. 26, 2016)](#)

**Counsel:** [*1] For NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C., doing business as VANGUARD ELDERCARE, also known as VANGUARD ELDERCARE MEDICAL GROUP, Plaintiff: Jason R. Delk, DELK MCNALLY LLP, Muncie, IN.

For ANTHONY BUNIN, Defendant, Counter Claimant: Jason P. Cleveland, Meghan Uzzi Lehner, CLEVELAND LEHNER CASSIDY, Indianapolis, IN.

For BIO-BEHAVIORAL CARE SOLUTIONS, LLC, Defendant: David Matthew Davis, HARDY LEWIS & PAGE PC, Birmingham, MI.

For NEUROLOGY AND PAIN MANAGEMENT ASSOCIATES, P.C., Counter Defendant: Jason R. Delk, DELK MCNALLY LLP, Muncie, IN.

**Judges:** LARRY J. McKINNEY, United States District Judge.

**Opinion by:** LARRY J. McKINNEY

## Opinion

### ORDER ON MOTION TO REMAND AND MOTION TO TRANSFER

This Order addresses two motions pending before the Court. The first motion is Plaintiff's, Neurology and Pain Management Associates, P.C., d/b/a Vanguard Eldercare a/k/a Vanguard Eldercare Medical Group ("Vanguard"), Motion to Remand. In that Motion, Vanguard asserts that Defendant Bio-Behavioral Care Solutions, LLC's ("BCS's") Notice of Removal (the "Notice") was defective because BCS failed to promptly file the Notice in the relevant Indiana state court (the "Indiana Court") through a licensed Indiana attorney, in violation of [28 U.S.C. § 1446(d)](#). *[*2] See generally*, Dkt. No. 21. BCS, however, argues that the Indiana Court received sufficient notice of the removal, therefore rendering its Notice—and its subsequent Amended Notice of Removal (the "Amended Notice")—effectual. *See generally*, Dkt. No. 22.

The second motion is BCS's Motion to Transfer. BCS asserts that this action should be transferred to the Eastern District of Michigan because it is so closely related to another pending action in that district, Cause No. 2:14-cv-14123-AC-RSW (the "Michigan Action"), which involves similar issues

and parties. *See generally*, Dkt. No. 17. In response, Vanguard claims that the Eastern District of Michigan does not have a sufficient connection to this action to justify such a transfer and that, if this action were not remanded to the Indiana Court, the proper venue is the Northern District of Indiana. *See generally*, Dkt. No. 28.

## I. BACKGROUND

On September 26, 2016, Vanguard filed its Complaint against Defendants BCS, Anthony Bunin ("Bunin"), and Robert Clemente,[1] asserting breach of contract, breach of fiduciary duty, fraud, tortious interference with business relationships, and unfair competition. Dkt. No. 1-1 (the "Complaint"). Vanguard's claims arise [*3] from a Memorandum of Understanding between Vanguard and Bunin, an employee of Vanguard's competitor, BCS, entered into on November 1, 2012. *Id.* at ¶ 8. Under the Memorandum of Understanding, Bunin agreed to provide marketing, strategic, collaborative, and developmental services for Vanguard's residential senior facilities and hospitals. Complaint, Ex. A (the "Memorandum of Understanding"), ¶ 2E. Although the Memorandum of Understanding indicates that Bunin and Vanguard were to further define the Service Area in which Bunin was to provide these services, it does state that the Service Area would "first include the Indiana market with [Vanguard's] existing facilities for behavioral healthcare services." *Id.* at ¶ 2D. The Memorandum of Understanding further indicates that it is governed by Indiana law. *Id.* at ¶ 12.

In the Complaint, Vanguard claims that Bunin deceived Vanguard by falsely informing Vanguard that he had terminated his employment with BCS and by falsely reporting his activities on Vanguard's behalf. Complaint, ¶¶ 12, 16-19. Vanguard further

asserts that Bunin breached the Memorandum of Understanding by continuing to work and solicit business for BCS, in spite of a non-compete [*4] clause in the Memorandum of Understanding intended to prevent Bunin from diverting business away from Vanguard. *Id.* at ¶¶ 13-15, 19-30. As a result, Vanguard brings claims against Bunin for breach of contract, breach of fiduciary duty, and fraud against Bunin, as well as claims of constructive fraud, tortious interference, and unfair competition against BCS and Bunin. *See generally*, Complaint.

On October 20, 2016, BCS filed the Notice with this Court, in which it stated that all of the defendants had received the Complaint on October 3, 2016. Dkt. No. 1, ¶ 2. The attorney for BCS, whose license to practice law in Indiana was administratively suspended, also filed a Notice with the Indiana Court on October 20, 2016. *Id.* at ¶ 12, 6-7.

On November 11, 2016, BCS filed the Amended Notice in this Court, further clarifying the citizenship of BCS and its members. Dkt. No. 18. Vanguard filed its Motion to Remand on November 21, 2016, claiming that the Indiana Court had not received proper notice of the removal because the Notice of Removal was filed in the Indiana Court by an attorney who was not licensed to practice law in Indiana. Dkt. No. 21. Indiana attorney Raymond Hafsten re-filed a Notice [*5] of Removal with the Indiana Court on November 22, 2016, on BCS's behalf. Dkt. No. 25, Ex. A.

On November 8, 2016, BCS filed its Motion to Transfer this action to the Eastern District of Michigan. Dkt. No. 16. In its Motion to Transfer, BCS asserts that the Eastern District of Michigan should adjudicate this action because that district has been adjudicating the Michigan Action since 2014 and involves similar parties and claims to those at issue in this action. *See generally*, Dkt. No. 17.

In the Michigan Action, BCS brought claims on

---

[1] Although Robert Clemente was originally named as a defendant to this action, Vanguard has since voluntarily dismissed him from this action. *See* Dkt. Nos. 31 and 32.

September 22, 2014, against Doctors Behavioral Hospital, LLC ("Doctors Hospital"), arising from a Marketing Agreement formed between BCS and Doctors Hospital, effective January 24, 2013. In its complaint, BCS alleged that Doctors Hospital failed to pay the amounts owed to BCS for services performed pursuant to the Marketing Agreement. Complaint, *Bio-Behavioral Care Solutions, LLC v. Doctors Behavioral Hospital, LLC*, No. 2:14-cv-14123-AC-RSW, Dkt. No. 1, Ex. 1.

BCS claims that the parties involved in this action and in the Michigan Action are similar because Doctors Hospital and Vanguard are both part of the Physicians Hospital System a/k/a the NeuroPsychiatric [*6] Hospitals System (the "Physicians Hospital System") and because Vanguard is specifically identified in the Marketing Agreement as an affiliate of Doctors Hospital. Dkt. No. 17 at 1-2. BCS further indicates that Bunin worked for BCS while the Marketing Agreement was effective and that Bunin entered into both an Independent Contractor Agreement, effective January 7, 2013, and an Employment Agreement, effective September 7, 2013, with the Physicians Hospital System. *Id.* at 3. BCS also states that this action and the Michigan Action involve the same issues because the Memorandum of Understanding between Bunin and Vanguard provides for similar services to those addressed in the Independent Contractor and Employment Agreements between Bunin and Physicians Hospital System. *Id.* Additionally, BCS indicates that Doctors Hospital asserted that Bunin violated its Employment Agreement with Physicians Hospital System by continuing to work for BCS in response to a Motion for Summary Judgment filed by BCS in the Michigan Action, just as Vanguard has asserted in this action. *Id.* at 3-5.

## II. <u>MOTION TO REMAND</u>

In its Motion to Remand, Vanguard primarily argues that because the attorney for BCS was administratively suspended [*7] from practicing law in Indiana, the Notice filed in the Indiana Court on October 20, 2016, is void, which would mean that BCS failed to meet all of the requirements of 28 U.S.C. § 1446 to properly affect the removal to this Court within the thirty-day statutory period. Dkt. No. 21, ¶¶ 7-13, 17-20. In response, BCS asserts that the Indiana Court received adequate notice of the removal from the Notice filed in the Indiana Court on October 20, 2016, and that the Notice as filed by Indiana attorney Raymond Hafsten on November 22, 2016, cured any potential defects related to the notice provided to the Indiana Court. Dkt. No. 22 at 2-5.

A party may remove to federal court a civil suit filed in state court so long as the district court has original jurisdiction. *See* 28 U.S.C. § 1441(a); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *FDIC v. JP Morgan Acceptance Corp. I*, 958 F. Supp. 2d 1002, 1004 (S.D. Ind. 2013). This Court has original jurisdiction over actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different states." 28 U.S.C. § 1332(a). A defendant that seeks to remove an action bears the burden of proving subject matter jurisdiction. *See* *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 1993); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

A defendant seeking to remove an action to federal court from a state court must "file in the district [*8] court of the United States for the district and division within which such action is pending a notice of removal" within thirty days after the defendant received a copy of the complaint. 28 U.S.C. §§ 1446(a) & (b). "Promptly after the filing of [the] notice of removal," the defendant seeking removal must also provide written notice of the removal to all adverse parties and "shall file a copy of the notice [of removal] with the clerk of such State court" in order to give effect to the removal. 28 U.S.C. § 1446(d). Once a

removal becomes effective, "the State court shall proceed no further unless and until the case is remanded." *Id.*

"Defective allegations of jurisdiction [within a notice of removal] may be amended" by the defendant seeking removal. 28 U.S.C. § 1653. Such amendments may be made even after the thirty-day period for removal expires if the defect to be amended is a procedural defect within the defendant's claim of jurisdiction and does not seek to add new jurisdictional grounds. *Tate v. Werner Co.*, No. IP 02-0031-C-K/T, 2002 U.S. Dist. LEXIS 11953, 2002 WL 1398533, at *4 (S.D. Ind. June 26, 2002) (concluding that an amendment to a notice of removal that was intended to correctly state grounds for diversity jurisdiction was a procedural amendment and appropriate under 28 U.S.C. § 1653).

Although BCS did file its Amended Notice after [*9] the thirty-day statutory period ended, the Amended Notice only sought to more clearly define the citizenship of BCS and its membership and did not propose any new jurisdictional grounds. Therefore, the Amended Notice was proper even though it was made beyond the thirty-day statutory period. *See Id.*

Vanguard relies on *Macri v. M&M Contractors, Inc.*, 897 F. Supp. 381 (N.D. Ind. 1995), to support remand of this action because the attorney for BCS could not properly file the Notice with the Indiana Court. Dkt. No. 21, ¶¶ 12-14, 21. In *Macri*, the plaintiff sought to remand in part because the notice of removal as filed with the district court was not signed by the defendant, in violation of 28 U.S.C. § 1446(b). *Id.* at 385. The court in *Macri* concluded that the defendant's attempt to cure this signature defect after the expiration of the thirty-day statutory period was insufficient because the thirty-day period is "?strictly construed'" and did not allow for failures to comply with 28 U.S.C. § 1446(b) to be cured after the period had expired. *Id.* (quoting *Northern Ill. Gas Co. v. Airco Indus. Gases, A Div.*

*of Airco, Inc.*, 676 F.2d 270, 273 (7th Cir. 1982)).

However, in this action, Vanguard challenges that BCS did not meet the requirements of 28 U.S.C. § 1446(d) and does not challenge that BCS met the requirements of 28 U.S.C. § 1446(b). As stated above, 28 U.S.C. § 1446(d) requires only that a defendant seeking removal file a copy of the notice of removal [*10] with the state court "[promptly after the filing of [the] notice of removal" in the district court. 28 U.S.C. § 1446(d). Because 28 U.S.C. § 1446(d) is subject to a promptness standard, rather than the "strictly construed" thirty-day time limit found in 28 U.S.C. §1446(b), there is no requirement that a notice of removal must be filed with a state court within the thirty-day statutory period. Therefore, although Vanguard validly asserts that BCS did not effectively file the Notice with the Indiana Court until attorney Hafsten filed the Notice on November 22, 2016, the fact that the Notice was filed with the Indiana Court more than thirty days after all of the defendants received the Complaint does not alone invalidate the Notice.

While 28 U.S.C. § 1446 does not provide a statutory definition for "promptly," courts have interpreted the term to have a variety of meanings. Some courts have indicated that delays up to twenty-two days, or even six months, have been sufficient to meet the promptness requirement under 28 U.S.C. § 1446(d). *See Bernegger v. Morrissette*, No. 2009 U.S. Dist. LEXIS 28432, 2009 WL 911394, at *3 (E.D. Wis. Mar. 31, 2009) (citing *Nixon v. Wheatley*, 368 F. Supp. 2d 635 (E.D. Tex. 2005) (twenty-two day delay in filing notice of removal in state court); *Whitney v. Wal-Mart Stores, Inc.*, No. Civ. 04-38-P-H, 2004 U.S. Dist. LEXIS 17437, 2004 WL 1941345, at *1 (D. Me. Aug. 31, 2004) (six-month delay in filing notice of removal in state court)). Furthermore, where a defendant has made a good faith [*11] effort to provide notice and the plaintiff has not been prejudiced by a delay in providing notice to a state court, "the requirements of section 1446(d) are

sufficiently fulfilled to effect removal." *L&O P'ship No. 2 v. Aetna Cas. and Sur. Co.*, 761 F. Supp. 549, 552 (N.D. Ill. 1991). *See also, Rubalcava v. Rock Island Cty.*, No. 4:12-cv-4078, 2013 U.S. Dist. LEXIS 106244, 2013 WL 3943253, at *3 (C.D. Ill. July 30, 2013). Because the Indiana Court has not taken any action in relation to this litigation since the Notice was filed in this Court on October 20, 2016, Vanguard has not been prejudiced in any way by the Indiana Court receiving effective notice of the Notice on November 22, 2016. Therefore, by correctly filing the Notice in the Indiana Court on November 22, 2016, BCS sufficiently satisfied the requirements of 28 U.S.C. § 1446(d) to effect removal and avoid remand to the Indiana Court.

### III. <u>MOTION TO TRANSFER</u>

Turning to BCS's Motion to Transfer, BCS argues that the Court should transfer this action to the Eastern District of Michigan in accordance with 28 U.S.C. §§ 1404(a), 1406(a), and 1631[2] in the interest of convenience to the parties and in the interest of justice in light of the similar Michigan Action. Dkt. No. 17 at 8-11. In response, Vanguard asserts that the Eastern District of Michigan is not a proper venue for this action under 28 U.S.C. § 1391(b) and lacks sufficient connection to this action to justify a transfer [*12] to the Eastern District of Michigan under 28 U.S.C. § 1404(a). Dkt. No. 28 at 5-6, 10. Vanguard further argues that this action should be transferred to the Northern District of Indiana if its Motion to Remand is denied. *Id.* at 6-9.

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district or division where the action could have been brought or to

---

[2] As stated above, Defendant Robert Clemente has been voluntarily dismissed from this action. *See* Dkt. Nos. 31 and 32. Therefore, BCS's arguments in favor of transferring venue to the Eastern District of Michigan based on a lack of personal jurisdiction over Clemente under 28 U.S.C. §§ 1406(a) and 1631 are moot, and the Court will only address BCS's arguments under 28 U.S.C. § 1404(a).

which the parties consent "[f]or the convenience of the parties and witnesses [and] in the interest of justice." Such a transfer under 28 U.S.C. § 1404(a) is appropriate only "when the moving party establishes that (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Comm'ning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, No. 1:15-cv-00062-TWP-DKL, 2016 U.S. Dist. LEXIS 64585, 2016 WL 2866053, at *3 (S.D. Ind. May 17, 2016) (citing *RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.*, No. 1:14-CV-88-TWP, 2014 U.S. Dist. LEXIS 106325, 2014 WL 3818289, at *2 (S.D. Ind. Aug. 4, 2014); *State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996)). The interest of justice element "relates to the efficient administration of the court system rather than the merits of the underlying dispute." *Long*, 2016 U.S. Dist. LEXIS 64585, 2016 WL 2866053, at *7. Factors considered in determining what is in the interest of justice include (1) "the likely speed to trial in each forum"; (2) "each forum's familiarity with the relevant law"; and (3) "the [*13] relationship of each forum to the controversy, particularly concerning whether jurors have a financial interest in the case, and whether jurors in one forum are better equipped to apply community standards." Id.

The party seeking a transfer of venue "has the burden to establish, by reference to particular circumstances, that the transferee forum is *clearly* more convenient than the transferor forum." 2016 U.S. Dist. LEXIS 64585, [WL] at *4. Because "[t]he weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude," a trial judge has broad discretion when determining whether to transfer venue. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). *See also, Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).

Although BCS argues that the Eastern District of

Michigan is the most convenient venue for this action because it is so similar to the Michigan Action currently pending in that district, this Court is not persuaded. BCS contends that the Eastern District of Michigan would be a convenient forum for the parties because Bunin is employed by a Michigan entity and often travels to Michigan, because Physicians Hospital System, of which Vanguard is an affiliate, is currently litigating in the Michigan Action, and because Vanguard has clients from Michigan. Dkt. No. 17 at 9; Dkt. No. 30 [*14] at 7. However, these statements alone are not sufficient for BCS to meet its burden to demonstrate that the Eastern District of Michigan clearly is a more convenient forum for Bunin, a citizen of Illinois, or Vanguard, an Indiana limited liability company. *See Long, 2016 U.S. Dist. LEXIS 64585, 2016 WL 2866053, at *4.* Furthermore, although BCS claimed that Bunin would be a witness in both this action and the Michigan Action, Dkt. No. 17 at 11, BCS failed to provide any reasons why the Eastern District of Michigan would be the most convenient forum for the other anticipated witnesses.

BCS largely focused its arguments on the interest of justice element under 28 U.S.C. § 1404(a), arguing that the Eastern District of Michigan is efficient because the Michigan Action has been pending there for over two years and concerns the same relevant law. Dkt. No. 17 at 9-11; Dkt. No. 30 at 4-5. The Court disagrees. First, this action and the Michigan Action do not address the same relevant law because they arise from two different agreements between distinct parties. While the Michigan Action concerns whether Doctors Hospital breached its Marketing Agreement with BCS, this action concerns whether Bunin breached his Memorandum of Understanding with [*15] Vanguard. Because these actions require interpretation of two distinct agreements, the Eastern District of Michigan would have no advantage in interpreting Vanguard's claims in relation to the Memorandum of Understanding as a result of its familiarity with the Michigan Action.

Second, as suggested by Vanguard, the Court concludes that the Northern District of Indiana presents the most convenient forum for this action. Because the Memorandum of Understanding at issue was negotiated and allegedly breached in the Northern District of Indiana, the Northern District of Indiana constitutes a proper venue. 28 U.S.C. § 1391(b)(2). Furthermore, because most of the witnesses who have personal knowledge regarding the alleged breach of the Memorandum of Understanding are individuals associated with long term care facilities in Indiana, Dkt. No. 28, Ex. A, ¶ 8, the Northern District of Indiana provides a more convenient forum for those witnesses. The Memorandum of Understanding is also governed by Indiana law, Complaint, Ex. A, ¶ 12, and an Indiana court would likely be most familiar with such law. Additionally, the Northern District of Indiana would have a substantial interest in adjudicating this action because plaintiff [*16] Vanguard is an Indiana corporation with its principal place of business located in the Northern District of Indiana. Clearly, the Northern District of Indiana provides the best forum for the convenience of the parties and witnesses and for the interests of justice.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Vanguard's Motion to Remand and **GRANTS in part and DENIES in part** BCS's Motion to Transfer. For the reasons stated herein, this action is hereby **TRANSFERED** to the Northern District of Indiana.

IT IS SO ORDERED this 10th day of January, 2017.

/s/ Larry J. Mckinney

LARRY J. McKINNEY, JUDGE

United States District Court

Southern District of Indiana

2017 U.S. Dist. LEXIS 3307, *16

---

**End of Document**

## [Am. Film & Printing, Ltd. v. Cowart Mulch Prods.](#)

United States District Court for the Northern District of Texas, Dallas Division

July 16, 2015, Decided; July 16, 2015, Filed

No. 3:15-CV-0682-L-BF

**Reporter**

2015 U.S. Dist. LEXIS 135092 *; 2015 WL 5836599

AMERICAN FILM & PRINTING, LTD., Plaintiff, v. COWART MULCH PRODUCTS, INC., Defendant.

**Subsequent History:** Adopted by, Motion denied by, Dismissed without prejudice by [Am. Film & Printing, Ltd. v. Cowart Mulch Prods., 2015 U.S. Dist. LEXIS 134201 (N.D. Tex., Oct. 1, 2015)](#)

**Counsel:** [*1] For American Film & Printing Ltd, Plaintiff: Lisa Vaughn Lumley, LEAD ATTORNEY, Shannon Gracey Ratliff & Miller LLP, Fort Worth, TX; Phillip Wayne McCrury, Shannon Gracey Ratliff & Miller, Fort Worth, TX.

For Cowart Mulch Products Inc, Defendant: Charles Christopher Groves, LEAD ATTORNEY, Miller Egan Molter & Nelson LLP, Dallas, TX.

**Judges:** PAUL D. STICKNEY, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** PAUL D. STICKNEY

## Opinion

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to [28 U.S.C. § 636(b)](#), the District Court referred (1) Defendant Cowart Mulch Products, Inc.'s ("Cowart Mulch") Motion to Dismiss and (2) Plaintiff American Film & Printing, Ltd.'s ("American Film") Motion to Remand to the United States Magistrate Judge for a recommendation on the disposition of the motions.

For the following reasons, the District Court should deny American Film's motion, grant Cowart Mulch's motion, and dismiss this action without prejudice.

### Background

American Film originally filed this action in the 249th District Court of Johnson County, Texas on December 23, 2014 alleging claims against Cowart Mulch for breach of contract and suit on a sworn account. *See* Rem. Not., Ex. A, Pl.'s First Am. Orig. Pet. According [*2] to its First Amended Original Petition and Request for Disclosure, which is the live pleading in this case, American Film is a Texas limited partnership in the business of printing and manufacturing flexible packaging for industrial production and consumer package goods, including packaging bags for mulch. *Id.*, at 1, ¶ 3 & 2, ¶ 8. Cowart Mulch is a Georgia corporation that allegedly retained American Film to manufacture and print mulch bags at American Film's facility in Johnson County, Texas. *Id.* at 2-3, ¶ 8. According to American Film, it manufactured, printed, and shipped more than 750,000 mulch bags to Cowart Mulch in multiple shipments over the course of several months in 2013 and 2014. *Id.* at 3, 7 12-14; *see also id.*, Summ. of Unpaid Inv. at 1. Cowart Mulch allegedly accepted delivery of the bags, but failed to pay American Film's invoices in a total amount of $161,469.94. *Id.* at 3-4, I 14, 17-18.

Asserting diversity jurisdiction, Cowart Mulch removed this action to federal court on March 2, 2015. At the same time, Cowart Mulch filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the United

States District Court for the Northern District of Georgia, Atlanta Division. By its motion, Cowart [*3] Mulch contends that American Film has failed to allege sufficient facts to justify the court's exercise of personal jurisdiction and that it has not purposefully availed itself of the laws of Texas. American Film filed a motion to remand the case to state court and, subject to its motion, a response to Cowart Mulch's motion to dismiss. American Film contends that Cowart Mulch did not timely file its notice of removal or file all the appropriate papers with the state court necessary to effect removal. American Film further contends that removal is barred because the state court action had already proceeded to judgment. On the issue of personal jurisdiction, American Film contends that the exercise of specific personal jurisdiction is proper because Cowart Mulch purposefully engaged in business in Texas by entering into a business transaction with a Texas resident knowing the transaction would be performed in Texas and the claims asserted in this case arise out of that transaction. The issues have been fully briefed, and the motions are ripe for determination.

## Removal Jurisdiction

The court first considers whether Cowart Mulch properly removed this case to federal court. *See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999)* (recognizing [*4] that, in most instances, district court should address alleged defects in subject matter jurisdiction before turning to issues of personal jurisdiction).

## Legal Standards

A defendant may remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. 28 U.S.C. § 1441(a). The removing party bears the burden of demonstrating both that federal jurisdiction exists and that the procedural

requirements of the removal statute have been satisfied. *See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)*. Any doubts as to the propriety of removal are construed in favor of remand. *Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000)*.

## Analysis

American Film contends that the removal of this case was procedurally defective in that Cowart Mulch failed to timely file its notice of removal within thirty days of the date it served the Texas Secretary of State. Pl. Resp. at 1-2. Because Cowart Mulch is a nonresident that does not maintain either a regular place of business or a registered agent in Texas, American Film effected service by sending a copy of the citation and its amended petition to the Texas Secretary of State by certified mail. *See* Tex. Civ. Prac. & Rem. Code §17.044(b).[1] The Secretary of State received these materials on January 26, 2015 and forwarded them [*5] to Coward Mulch on January 30, 2015. Pl.'s Resp. App., Ex. G. Cowart Mulch received the citation and American Film's amended petition on February 4, 2015. *Id.* It filed the notice of removal on March 2, 2015.

Title 28 U.S.C. § 1446 governs the procedure for a party to remove an action from state to federal court. Among other things, the statute requires that a defendant file a notice of removal within thirty days "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon

---

[1] Section 17.044(b) of the Texas Civil Practice and Remedies Code provides:

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

Tex. Civ. Prac. & Rem. Code §17.044(b).

which such action . . . is based . ." 28 U.S.C. § 1446(b). This thirty-day deadline is a federal standard, governed by federal law. *See Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705, 92 S. Ct. 1344, 31 L. Ed. 2d 612 (1972) ("While a state is free to establish such rules of practice for her own courts as she chooses, the federal removal statutes and United States Supreme Court decisions on removal are intended to have [*6] uniform nationwide application."). Contrary to American Film's assertion, service on the Secretary of State does not trigger the commencement of the time period for removal under federal law. *See Monterey Mushrooms, Inc. v. Hall*, 14 F. Supp. 2d 988, 991 (S.D. Tex. 1988). "Texas provisions for service of statutory agents do not constitute 'receipt by the defendant' for the purpose of beginning the thirty-day removal period." *Id.* (citing *Kurtz v. Harris*, 245 F. Supp. 752, 754 (S.D. Tex. 1965). Rather, the removal period begins when the defendant actually receives service. *Id.; see also Microtune, Inc. v. Big Shine Worldwide, Inc.*, No. 3:03-CV-726-K, 2004 U.S. Dist. LEXIS 32178, 2004 WL 414901, at *2 (N.D. Tex. Feb. 11, 2004) (service on the Secretary of State is not sufficient to commence the time period for removal); *McCrary v. Kansas City S. R.R.*, 121 F. Supp. 2d 566, 570 (E.D. Tex. 2000) (same); *Fid. Funding, Inc. v. Pollution Research & Control Corp.*, No. 3:98-CV-1691-P, 1999 U.S. Dist. LEXIS 215, 1999 WL 20955, at * 2 (N.D. Tex. Jan. 7, 1999) (same). Cowart Mulch actually received service on February 4, 2015, and it timely filed its notice of removal on March 2, 2015.

American Film also contends that removal was defective because Cowart Mulch failed to file with the state court a complete copy of the notice it filed with federal court. Pl. Resp. Br. at 3. American Film does not identify what was missing from Cowart Mulch's filing, but Cowart Mulch surmises that it might have been Exhibit A to the state court notice—a file-stamped [*7] copy of the federal court notice—which it admits was inadvertently omitted from the state court filing. Def. Reply at 4, n.1. Cowart Mulch remedied this omission on April

9, 2015 by refiling the state court notice with Exhibit A attached. *Id.*

The removal statute requires the defendant to file a copy of its removal notice with the state court promptly after the notice is filed in federal court. 28 U.S.C. § 1446(d). "The purpose of filing a copy of the removal petition with the state court 'is to inform the state district judge that he can no longer proceed with the case until the federal court decides whether it will retain jurisdiction or not.'" *Nixon v. Wheatley*, 368 F. Supp.2d 635, 640 (E.D. Tex. 2005) (quoting *Adair Pipeline Co. v. Pipelieers Local Union*, 203 F. Supp. 434, 437 (S.D. Tex. 1962)). A brief delay in filing a complete copy of the removal notice with the state court does not divest the federal court of jurisdiction. *See id.* Here, Cowart Mulch effected removal in a reasonably prompt manner. Even if the original state court filing was incomplete, Cowart Mulch corrected the omission less than six weeks later. Especially where, as here, the state court took no action in the case after removal, a short delay in filing a complete notice of removal in state court does not warrant remand. *See id.* (holding that thirty-six day delay in filing [*8] copy of notice of removal in state court did not necessitate remand); *see also Calderon v. Pathmark Stores, Inc.*, 101 F. Supp. 2d 246, 246-47 (S.D. N.Y. 2000) (same result where delay was thirty-six days long).

American Film further contends that removal is improper because the state court rendered a default judgment against Cowart Mulch on February 26, 2015, prior to removal. Pl.'s Resp. App., Ex. D. However, entry of a default judgment by a state court does not prevent a defendant from removing a case to federal court. *See De La Pena v. Hill-Rom Co., Inc.*, No. SA-04-CA-0809-XR, 2004 U.S. Dist. LEXIS 22910, 2004 WL 2538472, at *3 (W.D. Tex. Nov. 10, 2004). "Once a case is properly removed, the federal court maintains exclusive jurisdiction and may entertain a motion for relief from the state court default judgment under Rule 60(b)." *Id.* (citing CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, 14C FEDERAL PRACTICE AND PROCEDURE § 3738 at 408 (1998)). Because American Film has not identified a reason to remand this case to state court, its motion should be denied.

## Personal Jurisdiction

The court next considers Cowart Mulch's arguments that this case should be dismissed for lack of personal jurisdiction.

## Legal Standards

The assumption of personal jurisdiction over a nonresident defendant in a diversity case involves a two-step inquiry. First, the nonresident defendant must be amenable to service of process [*9] under the forum state's long-arm statute. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Second, the exercise of jurisdiction must comport with due process. *Id.* Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the court limits its inquiry to whether the exercise of personal jurisdiction over the nonresident defendant comports with federal constitutional due process requirements. *See Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 373 (5th Cir. 2003) (citing cases).

The due process requirements for exercising personal jurisdiction over a nonresident focus on whether the party has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotations omitted); *see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). "Minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Ruston Gas Turbines, Inc. v.*

*Donaldson Co.,* 9 F.3d 415, 418 (5th Cir. 1993). Specific jurisdiction exists when the contacts with the forum state arise from, or are directly related to, the cause of action. *Wilson,* 20 F.3d at 647. General jurisdiction is proper when the nonresident defendant has other "continuous and systematic" contacts with the forum unrelated to the pending litigation. *Id.* If a nonresident defendant has sufficient minimum contacts with the forum state, the [*10] court must consider whether the exercise of personal jurisdiction would be "unfair" or "unreasonable." *See Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir. 1999). The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. *See Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 14 (5th Cir. 1995). The court can make this determination without an evidentiary hearing based on the complaint, affidavits, and information obtained during discovery. *Colwell Realty Invs., Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). The uncontroverted allegations in the complaint must be taken as true and any conflicts in the evidence must be resolved in favor of the plaintiff *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

## Analysis

American Film tacitly concedes that Cowart Mulch does not have the type of "continuous and systematic" contacts with Texas necessary to establish general jurisdiction. Rather, American Film argues that the exercise of specific jurisdiction is proper because Cowart Mulch entered into a business transaction with a Texas resident knowing the transaction would be performed in Texas. Pl.'s Resp. at 4.

A federal court may assume specific jurisdiction over a nonresident who "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v.*

*Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958))*. To determine whether specific jurisdiction exists, a court [*11] must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining Constr. Corp. v. Adams Co. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)*. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Electrosource*, 176 F.3d at 871-72 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985))*. The contacts with the forum state must be such that "it is foreseeable that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* at 872 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980))*.

American Film contends that all of its customers, including Cowart Mulch, are required to execute a standard form contract, entitled "General Terms and Conditions of Sale," prior to doing business with it. Pl.'s Resp. App., Ex. A, Hanna Aff. at 1, ¶ 4; *Id.*, Ex. F, Clontz Aff. at 2, ¶ 3. Among other things, this form contains a provision in which the customer agrees that:

> [E]xclusive venue for any suit brought by American Film or [the customer] against the other arising from the transactions contemplated herein shall be the state or federal courts of Johnson County, Texas.

Pl.'s Resp. App., [*12] Ex. F, Clontz Aff., Tab 1 at 2. This forum-selection clause is mandatory. *See, e.g., Kevlin Servs.*, 46 F.3d at 14 (forum-selection clause was mandatory that stated "[t]he legal venue of this contract and any disputes arising from it

shall be settled in Dallas County, Texas"). Thus, if Cowart Mulch executed American Film's standard contract, there is personal jurisdiction over Cowart Mulch. *See id. at 15* (holding that mandatory forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts generally enforce such consent).

Cowart Mulch denies that it executed American Film's standard form containing the mandatory forum-selection clause. Def. Br. at 8; Def. Mot., Cowart Aff. at 2, ¶¶ 4-7. On a motion to dismiss for lack of personal jurisdiction, conflicts in the evidence are resolved in favor of the plaintiff. *Bullion*, 895 F.2d at 217. But, here, the *evidence* is not in conflict. The parties agree that neither of them has a copy of an American Film standard form contract containing the key forum-selection provision executed by Cowart Mulch. Def. Mot., Cowart Aff. at 2, ¶¶ 5, 6; Pl.'s Resp. App., Ex. F, Clontz Aff. at 2, ¶ 6. American Film attempts to create a conflict by offering affidavit testimony from its sales [*13] manager Ken Clontz that he is "certain" that he followed "standard operating procedure" and ensured that "a representative" of Cowart Mulch executed the standard form contract "prior to authorizing the manufacture" of Cowart Mulch's mulch bags. Def. Mot., Cowart Aff. at 2, ¶¶ 5, 6. However, Clontz's assertions are not supported by any specific facts that would establish his personal knowledge that an authorized representative of Cowart Mulch actually signed the standard form contract.

Notably, Clontz offers no specific facts regarding the date or the identity of the Cowart Mulch representative who allegedly executed the contract. *See* Pl.'s Resp. App., Ex. F, Clontz Aff. at 2, ¶ 6. Nor does he provide any specific testimony that he presented a standard form contract to Cowart Mulch for execution. *See id.* Affidavit testimony that is not based on personal knowledge is not competent evidence. *Source Network Sales & Marketing, LLC v. Ningbo Desa Elec. Mfg. Co., Ltd.*, No. 3:14-CV-1108-G, 2015 U.S. Dist. LEXIS

63794, 2015 WL 2341063, at *9 (N.D. Tex. May 15, 2015) (citing *Thompson v. Chambers*, 804 F. Supp. 188, 191 (D. Kan. 1992) ("[T]o be sufficient to put the contested facts in issue, affidavits submitted in support of or in opposition to motions to dismiss for lack of jurisdiction must comply with the requirements of Fed. R. Civ. P. 56 [(c)(4) [*14] ]; *i.e.*, they must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein.") and Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")). Because there is no competent evidence that Cowart Mulch executed a contract containing a mandatory forum-selection clause, the alleged contract does not establish a basis for the exercise of personal jurisdiction. The court therefore continues with its analysis of Cowart Mulch's contacts with Texas and this litigation.

American Film has submitted evidence that establishes that it began doing business with Cowart Mulch in 2012. Pl.'s Resp. App., Ex. F, Clontz Aff. at 2, ¶ 6. Over the course of three years, representatives of Cowart Mulch sent frequent emails and made numerous phone calls to American Film's sales manager at his office in Alvarado, Texas. *Id.* at 2-3, ¶¶ 7, 8. Cowart Mulch also prepared and sent approximately 20 purchase orders to American Film in Texas. *Id.* at 3, ¶ 9. American Film manufactured mulch bags for American [*15] Film at its facility in Texas and shipped the bags to Cowart Mulch from Texas. *Id.*, ¶¶ 10-11. Cowart Mulch allegedly paid some, but not all, of American Film's invoices by mailing checks to American Film in Texas. Id., Ex. F, Clontz Aff. at 3, ¶ 12 & Tab 6. American Film also contends that, according to industry custom, Cowart Mulch took title to the bags in Texas. *Id.*, Ex. A, Hanna Aff. at 2, ¶ 6.

Whether taken separately or together, these alleged contacts are insufficient to justify the exercise of personal jurisdiction over Cowart Mulch. It is undisputed that Cowart Mulch has no contacts with Texas, other than the fortuitous act of engaging in business with a Texas resident. It is well-established that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 344 (5th Cir. 2004) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)) (combination of mailing payments to the forum state, engaging in communications related to the execution and performance of a contract, and the existence of a contract between a nonresident defendant and a resident of the forum are insufficient to establish minimum contacts). The communications between the parties related to their business arrangements [*16] do not support the exercise of specific jurisdiction. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citing Holt Oil, 801 F.2d at 778) ("An exchange of communications in the course of developing and carrying out a contract [ ] does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."). Nor does the fact that American Film allegedly performed its business obligations in Texas. *Moncrief Oil*, 481 F.3d at 313 (holding that plaintiff's Texas location was "irrelevant" and did not establish minimum contacts where there was "no indication that the location of [plaintiff's] performance mattered"); *see also Int'l Demographics, Inc. v. SF Newspaper Co.*, No. H-06-0342, 2006 U.S. Dist. LEXIS 46572, 2006 WH 1897042, at *13 (S.D. Tex. July 10, 2006), *aff'd*, 230 Fed. Appx. 465 (5th Cir. 2007) (holding that fact that Texas resident performs its contractual obligations in Texas does not create jurisdiction over nonresident party in Texas). And, because jurisdiction does not depend on the technicalities of when title passes, the fact that title to the mulch bags may have passed to Cowart Mulch in Texas does not change the result. *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197 n. 8 (5th Cir. 1980); *medQ,*

*Inc. v. Highfield Open MRI, Inc.*, No. 3:07-CV-0949-BD, 2007 U.S. Dist. LEXIS 68994, 2007 WL 2726596, at *3 (N.D. Tex. Sept. 18, 2007). Additionally, there is evidence that Cowart Mulch's contacts with American Film were, at least initially, through a sales representative located in Georgia and Tennessee. Def. Mot., Cowart Aff. at 3, ¶ 8. This evidence [*17] weighs against the exercise of jurisdiction by a Texas court. *Int'l Demographics,* 2006 U.S. Dist. LEXIS 46572, 2006 WH 1897042, at *13. American Film has thus failed to meet its burden of establishing that Cowart Mulch has sufficient minimum contacts with Texas necessary to justify the court's exercise of personal jurisdiction. Accordingly, the District Court should grant Cowart Mulch's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).[2]

**RECOMMENDATION**

The District Court should DENY Plaintiff American Film's Motion to Remand (Doc. 6), GRANT Defendant Cowart Mulch's Motion to Dismiss (Doc. 2), and DISMISS this action without prejudice for lack of personal jurisdiction.

SO RECOMMENDED, July 16, 2015.

/s/ Paul D. Stickney

PAUL D. STICKNEY

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

---

[2] Because this case should be dismissed for lack of personal jurisdiction, the court does not reach Cowart Mulch's alternative arguments that venue is not proper in the Northern District of Texas or that the case should be transferred under 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Georgia, Atlanta Division.

# Delgado v. Bank of Am. Corp.

United States District Court for the Eastern District of California

November 23, 2009, Decided

1:09cv01638 AWI DLB

**Reporter**

2009 U.S. Dist. LEXIS 114220 *; 2009 WL 4163525

FERNANDO DELGADO, Plaintiff, v. BANK OF AMERICA CORP., COUNTRYWIDE HOME LOANS, INC., RECONTRUST COMPANY, and DOES 1-50, Defendants.

**Counsel:** [*1] For Fernando Delgado, Plaintiff: Richard J. Stinstrom , NCAED, Robert Joseph Buscho, LEAD ATTORNEYS, United Law Group, Irvine, CA.

For Bank of America Corporation, Countrywide Home Loans, Inc., Recontrust Company, N.A., Defendants: C. Charles Townsend , PHV, LEAD ATTORNEY, PRO HAC VICE, Akerman Senterfitt, LLP, Dallas, TX; Donald M. Scotten, Akerman Senterfitt, LLP, Los Angeles, CA.

**Judges:** Dennis L. Beck, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** Dennis L. Beck

# Opinion

ORDER DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT

(Document 26)

On September 24, 2009, Plaintiff Fernando Delgado ("Plaintiff") filed the instant motion to remand the action to state court. Pursuant to Local Rule 78-230(h), the Court deemed the matter suitable for decision without oral argument.

## PROCEDURAL BACKGROUND

Plaintiff, a resident of Kern County, California, filed the underlying action in Kern County Superior Court on May 28, 2009. The complaint named ReconTrust Company, N.A., Bank of America Corporation, Countrywide Home Loans, Inc., and Does 1 through 50 as Defendants and made claims with regard to a promissory note and deed of trust on certain real property located in Kern County, California.

On July 15, 2009, BAC Home Loans Servicing, [*2] LP, a Texas limited partnership with its principal place of business in Texas, removed the action to the Sacramento Division of this court based on diversity jurisdiction.

On July 22, 2009, Defendants filed a motion to dismiss.

On August 13, 2008, Plaintiff filed a motion to remand.

On August 21, 2008, BAC Home Loans Servicing, LP and ReconTrust Co., N.A. ("ReconTrust") filed an amended notice of removal.

On September 16, 2009, the Sacramento Division ordered an intradistrict transfer of the matter to the Fresno Division of this Court. In the transfer order, the court denied the pending motions without prejudice to being refiled in Fresno.

On September 16, 2009, Defendants refiled their motion to dismiss in this Court. A hearing is scheduled for November 30, 2009.

On September 24, 2009, Plaintiff refiled the instant motion to remand. On October 13, 2009,

Defendants filed an opposition to the remand motion. Thereafter, Plaintiff filed a reply, along with evidentiary objections.

## ALLEGATIONS AND CAUSES OF ACTION

According to the complaint, this action concerns real property located at 5520 Mar Grande Drive, Bakersfield, California 93307. On February 14, 2007, Plaintiff purchased the property [*3] and executed a promissory note in the amount of $ 256,622.00 secured by a deed of trust in favor of Countrywide Home Loans, Inc. ("Countrywide").

Plaintiff was subsequently laid off from his job and was unable to make his mortgage payments. He contacted Countrywide to resolve the issue of his inability to make payments. Plaintiff alleges that in or about November 2008 he was informed by Countrywide that new programs were about to be offered for the repayment or modification of mortgages and Plaintiff should not make further payments until those programs had been released and offered. Plaintiff followed that advice.

On or about December 10, 2008, Countrywide, and/or its successors in interest, [1] recorded a Notice of Default and Election to Sell Under Deed of Trust. On December 31, 2008, Countrywide sent Plaintiff a notice of delinquency and identified multiple methods of addressing the alleged delinquency. Plaintiff engaged counsel to negotiate a loan modification. On February 6, 2009, Plaintiff's counsel sent Countrywide a loan modification request package. On February 23, 2009, Countrywide responded and accepted Plaintiff's request as qualified written requests under the Real Estate [*4] Settlement Procedures Act ("RESPA").

On March 11, 2009, Defendant ReconTrust

---

[1] The remaining factual allegations name "Defendant COUNTRYWIDE and/or its successors in interest." For convenience, the Court will refer to Defendant as "Countrywide" throughout this section.

recorded a Notice of Trustee's Sale. Thereafter, Plaintiff's counsel contacted Countrywide and attempted to remove the pending sale. Plaintiff alleges that Countrywide informed his counsel that it had no record of receiving previous communications from Plaintiff or Plaintiff's counsel.

As a result of communications between Plaintiff's counsel and Countrywide, the Trustee's Sale was delayed until May 4, 2009, to permit consideration of the loan modification package. Following re-submission of the written loan modification package and repeated requests for updates, Plaintiff and Plaintiff's counsel received no contact from Defendants.

On April 30, 2009, and May 1, 2009, Plaintiff's counsel contacted Countrywide to obtain postponement of the Trustee's Sale. On May 1, 2009, Plaintiff's counsel received messages from Countrywide to the effect that it intended to deny the loan modification package because Plaintiff was shown to [*5] be "negative" in income flow. Plaintiff alleges that the package material did not reflect a "negative" income flow.

On May 1, 2009, Plaintiff's counsel received communication from Countrywide that it had never received a written loan modification package and it was too late to request an extension of the Trustee's Sale.

Between May 2 and May 4, 2009, Plaintiff's counsel attempted to contact Countrywide and ReconTrust regarding the loan modification package, the refusal to halt or delay the proposed Trustee's Sale and the inconsistencies in communications regarding the loan modification package. Plaintiff and his counsel were informed that the Trustee's Sale would not be stopped.

On May 4, 2009, the property was sold in non-judicial foreclosure proceedings.

On May 28, 2009, Plaintiff filed suit in state court. He asserted causes of action for: (1) violation of

California Civil Code § 2923.5 *et seq.*; (2) negligent misrepresentation; (3) intentional misrepresentation; (4) fraud; (5) violations of California Business & Professions Code §§ 17200 and 17500; and (6) breach of the covenant of good faith and fair dealing. Plaintiff seeks damages, declaratory relief and injunctive relief, including [*6] an order setting aside the sale of the property.

## DISCUSSION

### A. Legal Standard

By statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking to invoke federal jurisdiction bears the burden of establishing jurisdiction. See Indus. Tectonics, Inc. v. Aero Alloy, 912 F. 2d 1090, 1092 (9th Cir. 1990).

To establish jurisdiction based on diversity, there must be complete diversity of citizenship and an amount in controversy greater than $ 75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a).

### B. Analysis

Plaintiff moves for remand on the grounds that (1) Defendants cannot demonstrate complete diversity; (2) Defendants' claim of "fraudulent joinder" concedes the lack of complete diversity; (3) Defendants cannot establish that the amount in controversy exceeds $ 75,000; (4) Defendants failed to join all defendants in removal; (5) Defendants failed to file a Notice of Removal with the Superior Court; and (6) Defendants' [*7] Amended Notice of Removal is defective.

### 1. Complete Diversity

Plaintiff first seeks remand based on a lack of complete diversity of citizenship. Plaintiff is a

resident of California. Plaintiff asserts that the citizenship of ReconTrust destroys diversity. Plaintiff also questions the citizenship of BAC Home Loans Servicing LP.

### a. ReconTrust

Plaintiff contends that Defendant ReconTrust is either (1) a Nevada corporation with its principal place of business in Los Angeles County, California; or (2) an unincorporated association or trust whose stakeholders appear to be citizens of California or with principal place of business in California. [2] Defendants admit that ReconTrust Co., N.A. is a citizen of California, but argue that its citizenship should be disregarded for purposes of this action because its joinder was fraudulent.

"The joinder of a nondiverse defendant is fraudulent or a 'sham' and does not defeat jurisdiction if the plaintiff fails to state a cause of action against the defendant, and the failure is obvious according to the [*8] settled rules of the state." Soo v. United Parcel Serv., Inc., 73 F.Supp.2d 1126, 1128 (N.D.Cal.1999) (citing McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) ("fraudulent joinder is a term of art")); see Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir.) (noting that a defendant must show that "the individuals joined in the action cannot be liable on any theory" or that the resident defendant had "no real connection with the controversy"), cert. denied, 525 U.S. 963, 119 S. Ct. 407, 142 L. Ed. 2d 330 (1998).

A party is deemed to have been joined fraudulently if, "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." Kalawe v. KFC Nat'l Management Co., 1991 U.S. Dist. LEXIS 20073, 1991 WL

---

[2] In support, Plaintiff cites the Declaration Robert Buscho ("Buscho Dec.") PP 3, 4. However, no such declaration accompanies the instant motion to remand.

338566, at *2 (D.Haw. 1991) (citing Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1426 (9th Cir. 1989), cert. denied, 496 U.S. 937, 110 S. Ct. 3217, 110 L. Ed. 2d 664 (1990)). If a defendant claims that other defendants were fraudulently joined, the court may go beyond the pleadings to examine facts that show that the joinder is fraudulent. See Ritchey, 139 F.3d at 1318. "If there is a non-fanciful [*9] possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand." Macey v. Allstate Property and Cas. Ins. Co., 220 F.Supp.2d 1116, 1117 (N.D.Cal. 2002).

Defendants explain that Plaintiff has raised two claims against ReconTrust: (1) violation of Cal. Civ. Code § 2923.5 (First Cause of Action) and (2) violation of California's Unfair Competition Law ("UCL") (Fifth Cause of Action). [3] Defendants argue that this is only one claim because the UCL allegations are based on ReconTrust's alleged violation of § 2923.5. Complaint PP 52-54. Defendants assert the Plaintiff is precluded from recovering anything against ReconTrust under section 2923.5 for multiple reasons. The Court agrees.

As Defendants contend, because Plaintiff seeks the equitable remedy of injunction, his failure to satisfy the "tender rule" means he has failed to state a cause of action against ReconTrust, the trustee in the foreclosure sale. See, e.g., Lopez v. Chase Home Finance, LLC, 2009 U.S. Dist. LEXIS 34647, 2009 WL 1120318, *3 (E.D.Cal. Apr. 24, 2009) [*10] ("defaulted borrower is required to allege tender of the amount of the lender's secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure") (internal citations and quotations omitted). Although Plaintiff attempts to argue that the tender rule is not a complete defense, it appears essential

---

[3] Defendants note that Plaintiff has asserted "causes of action" for declaratory and injunctive relief. Defendants argue that these are not independent causes of action.

to state a cause of action to set aside a foreclosure. See, e.g., Lopez, 2009 U.S. Dist. LEXIS 34647, 2009 WL 1120318, at *3 (action to set aside a foreclosure, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes); FPCI RE-HAB 01 v. E & G Investments, Ltd., 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989) (explaining that valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust). Plaintiff arguably has conceded that he cannot satisfy the tender the rule. Complaint PP11-12. He also has provided no evidence to refute or to remedy his failure to satisfy the rule. Accordingly, it does not appear that Plaintiff can state a cause of action against ReconTrust.

In addition, Plaintiff has failed to effectively respond to Defendants' arguments that even setting [*11] aside the tender rule, Plaintiff's complaint fails to state a cause of action against ReconTrust. Instead, Plaintiff asserts that Defendants' arguments are "simply irrelevant given that Defendants have estopped themselves from the argument by filing a Declaration under California Civil Code § 2924, which effectively waives any challenge to the sufficiency of the Complaint as to ReconTrust and which constitutes a representation that ReconTrust will be bound by any relief this Court grants." Reply, p. 3. Plaintiff's assertion is without merit.

The declaration of nonmonetary status provides that ReconTrust is unaware of any evidence that it "engaged in any misconduct" and the "complaint makes no allegations that ReconTrust failed to perform any of its duties as a Trustee…." Nonmonetary Status Declaration P4. If no objection to the declaration of nonmonetary status is filed within 15 days from service of the declaration, the trustee is not required to participate any further in the action and is not subject to any monetary awards, but is bound by any court order relating to the subject deed of trust. Cal. Civ. Code § 2924. ReconTrust filed its declaration of nonmonetary

status on October [*12] 13, 2009. In his October 23, 2009 reply papers, Plaintiff neither objected to the filing of the declaration nor indicated that he intended to object. Arguably, if Plaintiff failed to file any objections within the 15-day period, he effectively conceded that there is no evidence that ReconTrust engaged in any misconduct and that the complaint makes no allegations that ReconTrust failed to perform any of its duties as trustee. Although Plaintiff argues that ReconTrust is an indispensable party and without it a court will not be able to it to rescind the trustee's sale, by its nonmonetary status declaration, ReconTrust has agreed to be bound by any court order relating to the deed of trust. Cal. Civ. Code § 2924; Declaration of Non-Monetary Status P5.

Moreover, ReconTrust has asserted no real interest or stake in the outcome of the suit. Sloan Aff. P7; Declaration of Non-Monetary Status P3. Thus, it is at most a nominal party. See, e.g., Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 873 (9th Cir. 2000) ("We will ignore the citizenship of nominal … parties who have no interest in the action, and are merely joined to perform the ministerial act of conveying [*13] the title if adjudged to the complainant") (quotations omitted); cf. Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 2009 U.S. Dist. LEXIS 60818, 2009 WL 2137423, *2 (N.D.Cal. 2009) (filing of declaration of non-monetary status in state court transformed trustee into nominal party; trustee was not required to join or consent to removal when plaintiff raised no timely objection to non-monetary status); Amaro v. Option One Mortgage Corp., 2009 U.S. Dist. LEXIS 2855, 2009 WL 103302, at *1 (C.D.Cal. Jan. 14, 2009) (noting that filing a declaration of nonmonetary status in state court transformed substitute trustee into a nominal third party).

Based on the above, ReconTrust does not defeat diversity jurisdiction.

b. BAC Home Loans Servicing

As an initial matter, Plaintiff appears to concede, without discussion, that BAC Home Loans Servicing, L.P., is a proper defendant in this action though not named in the complaint. Defendants argue that Plaintiff's complaint makes clear that he intended to name BAC Home Loans Servicing, LP and ReconTrust as Defendants. Defendants indicate that Countrywide Home Loans, Inc. should not have been named in the Complaint because the conduct forming the basis for Plaintiff's action occurred after [*14] March 3, 2007, the date Countrywide Home Loans, Inc. transferred the servicing of Plaintiff's mortgage to Countrywide Home Loans Servicing, LP, which later became BAC Home Loans Servicing, LP. Amended Notice of Removal P 6; Affidavit of Rick Sloan ("Sloan Aff.") PP4-5 and Affidavit of Devra Lindgren ("Lindgren Aff.") P3 Although Plaintiff objected to portions of the Rick Sloan affidavit submitted by Defendants, he did not object or respond to the portion that states:

> It is my understanding that Plaintiff has named Bank of America Corp. as a defendant in the caption of his lawsuit. However, that entity had no involvement in the servicing or handling of Plaintiff's loan or the resulting foreclosure. BAC Home Loans Servicing, LP, or its predecessor in interest, has been the loan servicer at all times relevant to Plaintiff's complaint, i.e., between November 2008 and May 2009.

Sloan Aff. P6. In sum, Plaintiff has not challenged the propriety of BAC Home Loans Servicing LP as a defendant.

However, Plaintiff argues that the removal papers provide no information that BAC Home Loans Servicing LP or its members are diverse. In their opposition papers and amended notice of removal, Defendants indicate [*15] that BAC Home Loans Servicing LP is a Texas limited partnership. For purposes of diversity jurisdiction, a limited partnership "is a citizen of all of the states of which its partners are citizens." Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir.

2006). Its members consist of BANA LP, LLC and BAC GP, LLC, limited liability companies that are citizens of Nevada. Amended Notice of Removal PP7-9; Lindgren Aff. PP5-6

For purposes of diversity, LLCs are treated like a partnership and "an LLC is a citizen of every state of which its owners/members are citizens." Id. BANA and BAC GP are owned by Bank of America, N.A. Amended Notice of Removal P8; Lindgren Aff. P 8. National banking associations are "citizens of the States in which they are respectively located." 28 U.S.C. § 1348. Such association is "located" in "the State in which its main office, as set forth in its articles of association, is located." Wachovia Bank v. Schmidt, 546 U.S. 303, 307, 126 S. Ct. 941, 163 L. Ed. 2d 797 (2006). Bank of America, N.A. is a citizen of North Carolina, where its articles of association establish its main office. Amended Notice of Removal P9; Lindgren Aff. P7. Defendants conclude that BAC Home Loans Servicing LP [*16] is a citizen of North Carolina. In his reply, Plaintiff does not challenge the "citizenship" of BAC Home Loans Servicing LP. As such, BAC Home Loans Servicing LP does not destroy complete diversity.

2. Amount in Controversy

Plaintiff initially contends that Defendants have failed to meet their burden of proving that the amount in controversy exceeds $ 75,000.

Plaintiff's complaint does not specify a dollar amount. In that instance, "the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds [the jurisdictional amount]." Singer v. State Farm Mut. Auto Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). The burden may be satisfied if it is "facially apparent from the complaint" or through "summary-judgment-type evidence." Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005).

Defendants have made both showings. First, Defendants point to allegations in Plaintiff's complaint that he suffered financial losses, including loss of real property, damage to reputation and credit standing, embarrassment and humiliation and emotional distress. Plaintiff also added a claim for punitive damages. Defendants assert that if successful, Plaintiff's [*17] recovery would exceed $ 75,000, and his punitive damages claim alone could exceed $ 75,000. Defendants also point out that Plaintiff made no effort to argue that he seeks less than $ 75,000 and that he submitted no stipulations or affidavits to that effect.

Second, Defendants argue that they have submitted sufficient evidence outside the Complaint to satisfy their burden. Defendants contend that in actions seeking declaratory or injunctive relief, such as here, the amount in controversy is measured by the value of the object of the litigation. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002). Defendants assert that the object of this litigation is the home that Plaintiff seeks to reclaim. Defendants submitted an affidavit claiming that an appraisal of the property performed on February 7, 2007, exceeds $ 75,000. Sloan Aff. P8.

Plaintiff proffers nothing to suggest that he is not seeking more than $ 75,000 in this lawsuit. As to the value of the home, Plaintiff has objected to Defendants' supporting affidavit as lacking foundation and as hearsay. Plaintiff also contends that Defendants fail to consider the liens on the real property that reduce its overall value. However, Plaintiff [*18] provides no conflicting evidence, admissible or otherwise, to suggest that the value of home does not exceed $ 75,000. Accordingly, Defendants have met their burden regarding the amount in controversy.

Insofar as Plaintiff asserts judicial estoppel to claim that Defendants cannot establish the amount in controversy, this assertion is without merit. Plaintiff attempts to argue that because Defendants filed a motion to dismiss contending that no possible claim

for relief is stated in the pleadings, then any argument or representation by Defendants in this motion that the amount in controversy has any value is contradictory. However, the amount in controversy requirement, which is jurisdictional, is independent of whether Plaintiff's complaint is sufficient to state a claim for relief. Fed. R. Civ. P. 12(b)(1) (suit may be dismissed for lack of subject-matter jurisdiction); Fed. R. Civ. P. 12(b)(6) (suit may be dismissed for failure to state a claim upon which relief can be granted).

3. Consent to Removal by All Defendants

Plaintiff contends that remand is compelled because Defendant Bank of America Corp. and Defendant ReconTrust did not join the removal notice. Defendants respond that BAC [*19] Home Loans Servicing LP and ReconTrust are the only appropriate defendants.

Generally, all defendants must join in a removal notice with the exception of nominal parties. See Hewitt v. City of Stanton, 798 F.2d 1230, 1232 (9th Cir. 1986). Defendants argue that Plaintiff did not intend to name Bank of America Corp. as a defendant. Defendants assert that Plaintiff named Bank of America Corp. under the misconception that it was Countrywide Home Loans, Inc.'s successor in interest. Defendants claim that Bank of America Corp. had nothing to do with the servicing of Plaintiff's mortgage. Sloan Aff. P6.

Plaintiff endeavors to discount Defendants argument regarding "intent" to file this action against Bank of America Corp. by stating only that Bank of America is named in the caption and body of the complaint. As previously noted, however, he has not objected to the portions of the Sloan Affidavit indicating that Bank of America Corp. had no involvement in the servicing or handling of Plaintiff's loan or the resulting foreclosure. Sloan Aff. P6. Plaintiff has not refuted Defendants' contention that he named Bank of America Corp. because he believed it to be Countrywide's successor in interest. [*20] Further, Plaintiff has

not challenged Defendants' position that BAC Home Loans Servicing LP is the proper defendant.

As to Plaintiff's contention that ReconTrust did not join in the removal, Defendants argue that both BAC Home Loans Servicing LP and ReconTrust provided their consent by jointly removing the action and that they are represented by the same legal counsel. Here, the Notice of Removal states that even though ReconTrust's presence in the suit is improper, it consented to removal of the suit and was represented by the same counsel as consenting defendant BAC Home Loans Servicing, LP. Notice of Removal P9. Plaintiff cites no authority holding that two defendants represented by the same counsel must separately consent to the removal of an action. Accordingly, the Notice of Removal is sufficient to demonstrate that ReconTrust, through its counsel, consented to removal. Cf. Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 n.11 (5th Cir. 1988) ("This does not mean that each defendant must sign the original petition for removal, but there must be some timely filed written indication from each served defendant, *or from some person or entity purporting to formally act on [*21] its behalf in this respect and to have authority to do so,* that it has actually consented to such action") (emphasis added).

4. Amended Notice of Removal

Plaintiff claims that Defendants' Amended Notice of Removal is defective pursuant to 28 U.S.C. § 1446. To support this claim, Plaintiff first indicates that the Amended Notice of Removal was not filed within thirty (30) days of service of the complaint. A notice of removal must be filed within thirty days after receipt of the complaint or within thirty days after service of the summons. 28 U.S.C. § 1446(b). In this case, Defendants were served on June 15, 2009, and the original notice of removal was filed timely in district court on July 15, 2009. Defendants filed their amended notice on August 21, 2009.

Generally, a notice of removal may not be amended

after the thirty-day period to add a separate basis for removal. ARCO Envtl. Remediation, LLC v. Dep't of Health and Envtl. Quality of Mont., 213 F.3d 1108, 1117 (9th Cir. 2000) (citations omitted). However, the notice may be amended after the thirty-day period to correct a defective allegation of jurisdiction. Id.; 28 U.S.C. § 1653 (defective allegations of jurisdiction may be amended, [*22] upon terms, in the trial or appellate courts); see also Kacludis v. GTE Sprint Communications Corp., 806 F. Supp. 866, 869 (N.D.Cal. 1992) (defects in form of a removal petition are amendable at any time, not just within the original 30-day period for removal). In this instance, Defendants did not amend their notice of removal to state an alternative basis for removal jurisdiction. Instead, Defendants primarily amended their notice to provide additional allegations as to the citizenship of BAC Home Loans Servicing LP, which is permitted after expiration of the thirty-day period.

To the extent Plaintiff contends that Defendants were required to seek leave of the Court to amend the notice of removal, this contention is not fully supported. For example, courts properly have allowed parties to amend their notice through an opposition to a motion to remand. Cohn, 281 F.3d at 840 n.1 (district court did not err in construing opposition to motion to remand as an amendment to notice of removal).

Plaintiff next argues that remand should be ordered because Defendants filed the initial Notice of Removal in state court more than thirty (30) days after removal. [4] The thirty-day requirement of §

1446 [*23] applies only to filing the notice in federal court and not in state court. 28 U.S.C. § 1446(b). Pursuant to § 1446, defendants must file a copy of the removal notice with the state court promptly after filing it in federal court. 28 U.S.C. § 1446(d). This section does not define "promptly." However, courts have determined that "promptly" does not mean simultaneously. Shanks v. Northern Cal. Cement Masons Joint Apprenticeship Training Comm., 1993 U.S. Dist. LEXIS 6331, 1993 WL 150273, at *3 (N.D.Cal. 1993). Here, Defendants filed the removal notice in state court on September 9, 2009, approximately 56 days after removal to federal court. Short delays in filing the notice of removal with the state court do not necessarily warrant remand. See, e.g., Nixon v. Wheatley, 368 F.Supp.2d 635, 640 (E.D.Tex. 2005) (twenty-two days); Shanks, 1993 U.S. Dist. LEXIS 6331, 1993 WL 150273 at *3, (nearly sixty days).

Defendants explain that although a notice to the state court was ready to be filed the same day Defendants filed their notice of removal in district court, the person charged with filing the notice failed, through inadvertence or mistake, to file the notice with the state court. Declaration of Donald M. Scotten ("Scotten Dec.") PP3-4. No one discovered the mistake until September 9, 2009. Defendants filed the notice with the state court that same day. Scotten Dec. P5. Prior to that time, no state court proceedings had been conducted. Scotten Dec. P6.

The Court finds that Defendants remedied their error as soon as they learned of it and the purposes of § 1446 would not be undermined by retaining jurisdiction as no state court proceedings were conducted. Accordingly, Defendant's procedural delay in filing the notice of removal in state court does not warrant remand.

Insofar as Plaintiff asserts that Defendants were required to file [*25] a copy of the Amended Notice of Removal in state court or that failure to do so divests this Court of jurisdiction, he cites no

---

[4] Defendants argue that Plaintiff waived this objection by failing to raise it within thirty days of removal. Defendants assert that any objection to a defect other than lack of subject matter jurisdiction must be made within thirty days of removal to federal court. 28 U.S.C. § 1447(c). Defendants state that Plaintiff did not raise this issue [*24] when he originally filed the motion to remand on August 13, 2009. Given the intradistrict transfer and corresponding order denying the motion to remand without prejudice to refiling, the Court will consider the merits of Plaintiff's argument in this instance.

2009 U.S. Dist. LEXIS 114220, *25

authority for such assertion. His argument also appears unsupported given that a removal notice may be amended through an opposition to a motion to remand. See, Cohn, 281 F.3d at 840 n.1.

## **ORDER**

Based on the above, Plaintiff's motion to remand is DENIED.

IT IS SO ORDERED.

**Dated: November 23, 2009**

**/s/ Dennis L. Beck**

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

## [Packrite, LLC v. Graphic Packaging Int'l, Inc.](#)

United States District Court for the Middle District of North Carolina

August 29, 2018, Decided; August 29, 2018, Filed

1:17CV1019

**Reporter**

2018 U.S. Dist. LEXIS 147058 *; 2018 WL 4112827

PACKRITE, LLC, Plaintiff, v. GRAPHIC PACKAGING INTERNATIONAL, INC., Defendant.

**Subsequent History:** Motion granted by, in part, Motion denied by, in part, Dismissed without prejudice by [Packrite v. Graphic Packaging Int'l, Inc., 2019 U.S. Dist. LEXIS 113428, 2019 WL 2992340 (M.D.N.C., July 9, 2019)](#)

Dismissed by, in part, Partial summary judgment denied by [Packrite, LLC v. Graphic Packaging Int'l, LLC, 2020 U.S. Dist. LEXIS 225130 (M.D.N.C., Dec. 2, 2020)](#)

Magistrate's recommendation at [Packrite v. Graphic Packaging Int'l, 2020 U.S. Dist. LEXIS 227873 (M.D.N.C., Dec. 4, 2020)](#)

**Counsel:** [*1] For PACKRITE, LLC, Plaintiff: CHRISTOPHER CHARLES FINAN, LEAD ATTORNEY, ROBERSON HAWORTH & REESE, P.L.L.C., HIGH POINT, NC.

For GRAPHIC PACKAGING INTERNATIONAL, INC., Defendant: MATTHEW M. HOLTGREWE, LEX MOSER ERWIN, ERWIN BISHOP CAPITANO & MOSS, P.A., CHARLOTTE, NC.

**Judges:** Loretta C. Biggs, United States District Judge.

**Opinion by:** Loretta C. Biggs

## Opinion

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Packrite, LLC ("Packrite"), initiated this action in Guilford County Superior Court, alleging five claims against Defendant, Graphic Packaging International, Inc. ("Graphic"). (ECF No. 2.) Defendant removed the action to this Court on the basis of diversity jurisdiction pursuant to [28 U.S.C. § 1332](#). (ECF No. 1.) Before the Court are Plaintiff's Motion to Remand, (ECF No. 14), and Defendant's Partial Motion to Dismiss pursuant to [Rules 9(b)](#) and [12(b)(6) of the Federal Rules of Civil Procedure](#), (ECF No. 8). For the reasons that follow, the Court denies Plaintiff's motion to remand and grants Defendant's partial motion to dismiss.

## I. BACKGROUND

Packrite, a North Carolina company, "is a specialized trade finisher for the corrugated and folding carton packaging industries." (ECF No. 2 ¶¶ 1, 4.) Graphic is a Delaware company that manufactures "folding cartons and cardboard [*2] boxes used for packaging a variety of food, beverage, and other consumer goods." (ECF No. 9 at 2; ECF No. 2 ¶¶ 2, 5.) Graphic's principal place of business is in Atlanta, Georgia. (ECF No. 2 ¶ 2.)

Beginning in or around 2012, Graphic engaged Packrite's services as an outsource vendor, on an as-needed basis, to assist with fulfilling customer orders and meeting Graphic's manufacturing needs. (*Id.* ¶¶ 6, 12.) In or around August 2016, Graphic requested Packrite's temporary assistance "in producing the packaging for Clorox Kitty Litter,"

2018 U.S. Dist. LEXIS 147058, *2

(the "Clorox Project"). (*Id.* ¶ 15.) The Clorox Project "was part of a very large contract obtained by [Graphic]" however, Graphic "did not have the resources, equipment or capacity to undertake the [Clorox Project] itself." (*Id.* ¶¶ 16, 17.) According to the Complaint, "Packrite was initially unwilling to assist" Graphic with the Clorox Project because Packrite also lacked the necessary resources to assist on such a large project and, further, such assistance would limit Packrite's ability to pursue or obtain other business opportunities. (*Id.* ¶¶ 21, 22, 24.)

The Complaint alleges that representatives from Graphic told Packrite that, should Packrite agree [*3] to assist Graphic with the Clorox Project, Graphic would then agree to enter into a three year contract "under which Packrite would be the sole producer of [Graphic's] requirements of [b]eer [c]artons" (the "Beer Carton Project"). (*Id.* ¶ 26.) Graphic's representatives told Packrite that the Beer Carton Project would result in annual gross revenues of approximately $10,000,000 to Packrite. (*Id.* ¶ 30.) Based on these representations, Packrite agreed to assist Graphic with the Clorox Project and, in early September 2016, Packrite began its production preparations, followed by the start of actual production in November 2016. (*Id.* ¶¶ 31, 37, 40.)

In early 2017, Graphic provided Packrite with an initial draft of the Beer Carton Project contract, to which Packrite proposed revisions and returned to Graphic. (*Id.* ¶¶ 48-49; *see* ECF Nos. 2-1, 2-2.) "Packrite never received any response from [Graphic regarding] its proposed changes to the written Beer Carton [c]ontract, although discussions relating to the same continued through approximately May, 2017." (ECF No. 2 ¶ 50.) Ultimately, the parties never executed a contract for the Beer Carton Project. (*Id.* ¶ 64.)

On October 11, 2017, Packrite filed [*4] suit against Graphic in Guilford County Superior Court, alleging the following five claims: (1) Breach of Contract (Claim I); (2) Quantum Meruit (Claim II);

(3) Fraudulent Misrepresentation/Inducement (Claim III); (4) Negligent Misrepresentation/Detrimental Reliance (Claim IV); and (5) Unfair and Deceptive Trade Practices Act ("UDTPA") under N.C. Gen. Stat. § 75-1.1 (Claim V). (ECF No. 2 ¶¶ 68-96.) On November 8, 2017, Graphic removed the action to this Court on the basis of diversity of citizenship, (*see* ECF No. 1), and subsequently filed a partial motion to dismiss Claims III, IV, and V, (ECF No. 8). Three months later, on February 23, 2018, Packrite filed a Motion to Remand the case to state court, contending that the removal was procedurally defective on the grounds that Graphic failed to promptly file a copy of the notice of removal with the state court. (*See* ECF No. 14.) The Court will first consider Plaintiff's Motion to Remand.

## II. PLAINTIFF'S MOTION TO REMAND

Packrite, in its motion to remand, does not challenge that this Court has diversity jurisdiction over the claims set forth in the Complaint. (*See generally* ECF Nos. 14, 15.) Rather, Packrite contends that Graphic failed to satisfy the procedural [*5] requirements for removal. (*See* ECF No. 14.) Specifically, Packrite argues that this Court should remand the action because Graphic failed to promptly notify the state court of removal of the action to federal court. (*Id.* 14 ¶ 3; ECF No. 15 at 1, 4.) In response, Graphic admits to its delay in notifying the state court, but contends that such delay was merely a procedural defect which, standing alone, does not warrant remand of the action to state court. (ECF No. 16 at 1, 6.) Graphic further argues that Packrite has waived any objections to removal because it failed to raise its objection within thirty days of receiving notice of removal, as required by statute. (*Id.* at 5.) The Court agrees with Graphic.

The procedure for removal is set forth in 28 U.S.C. § 1446 which provides that a defendant may remove any civil action by filing a notice of

removal "in the district court of the United States for the district and division within which the action is pending." 28 U.S.C. § 1446(a). A removing party is also required to provide notice to opposing parties and to the clerk of the state court promptly after filing notice of removal with the district court. *Id.* § 1446(d). Such filing "shall effect the removal and the [s]tate court shall proceed no [*6] further unless and until the case is remanded." *Id.*

Following removal, a plaintiff may object by filing a motion to remand pursuant to 28 U.S.C. § 1447(c). A motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). "Thus, § 1447(c) provides that a party who fails to note a non-jurisdictional objection within 30 days of the notice of removal waives the objection." *Wiley v. UPS*, 11 Fed. Appx. 176, 178 (4th Cir. 2001). Here, Packrite received notice of removal when it was electronically filed with this Court on November 8, 2017. (*See* ECF No. 1 at 4.) Then, on February 23, 2018, 107 days after receiving notice of removal, Packrite filed its motion to remand. (ECF No. 14.) Packrite has, therefore, waived its right to object to removal of this action, and its motion to remand is not properly before the Court.

However, even if this Court were to determine that Packrite had not waived its right to object to removal, remand on the basis that Graphic failed to comply with the notice requirements of 28 U.S.C. § 1446(d) would be improper. As previously stated, 28 U.S.C. § 1446(d) requires that *"[p]romptly* after the filing of" a Notice of Removal in federal court, the defendant must provide written notice [*7] to adverse parties and must "file a copy of the notice" with the state court. 28 U.S.C. § 1446(d) (emphasis added). The purpose of the statute's notice and filing requirement is to notify the state court of the removal so that it can terminate its proceedings, avoid duplicative work, and conserve judicial resources. *See White v. Hous. Auth. for Baltimore City*, No. GLR-16-1965, 2016 U.S. Dist. LEXIS

140937, 2016 WL 5930834, at *1 (D. Md. Oct. 11, 2016) (citing *Delavigne v. Delavigne*, 530 F.2d 598, 601 n.5 (4th Cir. 1976)). Although the statute does not define the term "promptly," courts have held that a delay in filing a removal notice with the state court does not warrant remand where the statutory purpose is not undermined, and where such delay constitutes a mere technical or procedural defect. *See, e.g., Lang v. Mattison*, No. 6:13-038-DCR, 2013 U.S. Dist. LEXIS 68133, 2013 WL 2103145, at *3 (E.D. Ky. May 14, 2013) (denying motion to remand where defendants' one-month delay in filing a notice of removal in state court was a technical defect later cured by defendants); *Bohanna v. Hartford Life & Accident Ins. Co.*, 848 F. Supp. 2d 1009, 1014 (W.D. Mo. 2012) (finding that the statutory requirement was satisfied despite a 67-day delay in filing a notice of removal in state court and that such delay did not warrant remand); *Parker v. Malone*, No. CIV.A. 7:03CV00742, 2004 U.S. Dist. LEXIS 1096, 2004 WL 190430, at *2 (W.D. Va. Jan. 15, 2004) (concluding that a 22-day delay in notifying state court did not thwart the statutory purpose).

Here, Graphic failed to file its notice of removal [*8] with the state court until three months after removing the case to this Court and notifying Packrite of the same. During the intervening period, the only action taken by the state court was its issuance of a Notice of Administrative Hearing, dated February 1, 2018, (ECF No. 16-1 at 5). In response to the Notice of Administrative Hearing, on February 13, 2018, Graphic filed a Notice of Removal with the state court. (*Id.* at 8-13.) The state court then took no further action in the case. *See Bohanna*, 848 F. Supp. 2d at 1014 (denying motion to remand based, in part, on the fact that, although there was a delay in defendant's filing of a notice of removal in state court, "no significant action was taken in state court during the 67-day time period such that either party [was] adversely affected by the delay"). Thus, Graphic's actions, while delayed, provided the state court with the notice necessary to stay its

proceedings, thereby fulfilling the purpose of the statute. *See White, 2016 U.S. Dist. LEXIS 140937, 2016 WL 5930834, at *1*. Further, the Court finds no discernible prejudice to Plaintiff given that prior to, and following, Graphic's filing of a notice of removal with the state court, neither party made any court appearances nor filed any documents in the state court action. In fact, [*9] both parties have been actively engaged in litigating the instant case before this Court. (*See* ECF Nos. 1, 2, 4-18.)

Based on the above, the Court concludes that Packrite's failure to seek remand of this action to state court within the thirty days required under 28 U.S.C. § 1447(c) constitutes a waiver of its right to object to removal. However, even assuming *arguendo* that this Court could consider Packrite's motion to remand, this Court is not persuaded by its arguments. Graphic's delay was inadvertent, did not burden the state court, and was remedied without prejudice to Packrite. The Court, therefore, concludes that the requirements of 28 U.S.C. § 1446(d) were sufficiently fulfilled to effect removal and advance the purposes of the statute. Thus, remand based on Graphic's delayed filing of its notice of removal with the state court would be inappropriate. Accordingly, Packrite's motion to remand will be denied.

## III. DEFENDANT'S PARTIAL MOTION TO DISMISS

The Court will next consider Graphic's Partial Motion to Dismiss Claims III, IV, and V of the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## A. Legal Standards

### 1. Rule 9(b)

Where a party alleges fraud, the complaint must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-84 (4th Cir. 1999)*. Under Rule 9(b), "[i]n alleging fraud . . . a [*10] party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The alleged "circumstances" which must be plead with particularity include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison, 176 F.3d at 784* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)).

The primary purposes of Rule 9(b) are: (1) to give a defendant sufficient notice of the claim(s) against him so that he may formulate a defense; (2) to forestall frivolous lawsuits; (3) to prevent fraud actions in which all facts are learned only through discovery; and (4) to protect a defendant's goodwill and reputation. *See id.* According to the Fourth Circuit, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Failure to satisfy the heightened pleading requirements of Rule 9(b) subjects a fraud claim to dismissal under Rule 12(b)(6). *Id. at 783 n.5*.

### 2. Rule 12(b)(6)

A motion to dismiss [*11] under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009)*. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (citation omitted). Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). In considering a Rule 12(b)(6) motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached [*12] [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

## B. DISCUSSION

## 1. Fraudulent Misrepresentation/Inducement (Claim III)

Graphic first argues that Packrite's fraudulent misrepresentation/inducement claim must be dismissed because Packrite has failed to plead this claim with the particularity required by Rule 9(b). (ECF No. 9 at 7-8.) According to Graphic, the

Complaint fails to identify the person(s) who made the alleged misrepresentations, as well as when and where such misrepresentations were made. (*Id.* at 6-8.) Packrite argues, in response, that both [of its] fraud claims[1] are pled with sufficient particularity to give rise to a plausible claim for relief under Rule 9(b)." (ECF No. 11 at 7-14.)

To state a claim for fraudulent misrepresentation or fraudulent inducement under North Carolina law, a party must allege the following: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) that was made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *See Taylor v. Gore, 161 N.C. App. 300, 588 S.E. 2d 51, 54 (N.C. Ct. App. 2003)* (listing the elements of fraudulent misrepresentation); *TradeWinds Airlines, Inc. v. C-S Aviation Servs., 222 N.C. App. 834, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012)* (listing the elements of fraudulent inducement). Because Packrite alleges fraud, its claim must satisfy [*13] the heightened pleading requirements of Rule 9(b). *See Harrison, 176 F.3d at 783-84*.

Here, a review of the Complaint reveals that Packrite has sufficiently alleged the identity of the individuals who made the alleged misrepresentations. In its Complaint, Packrite specifically identified Tom Fester, Chris Berndt and/or Jeb Pfeifle as the persons who, "either individually or collectively," made alleged fraudulent misrepresentations to Packrite regarding Graphic's intention to enter into a three-year Beer Carton Project contract with Packrite. (ECF No. 2 ¶¶ 26, 30, 35). Further, the Complaint identifies Michael Drummond and Kevin Brown as the Packrite representatives to whom the alleged

---

[1] Packrite contends that Claim III of the Complaint "alleges two separate, alternative claims for fraud against [Graphic]—one based on [Graphic's] affirmative misrepresentations (Fraudulent Misrepresentation), and the other based on [Graphic's] material omissions and concealment in breach of a duty to disclose (Fraudulent Inducement)." (ECF No. 11 at 7.)

misrepresentations were made regarding the Beer Carton Project contract. (*Id.* ¶ 30.) Packrite has also sufficiently alleged the timing of the specific misrepresentations forming the basis for this claim by stating that they were made in or around August 2016, (*id.* ¶¶ 26, 35.) *See McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559, 560 (4th Cir. 2013)* (finding that plaintiff's allegation that fraud occurred during late summer or fall 2006 was enough to meet time requirement of Rule 9(b)). Additionally, Packrite has sufficiently alleged the contents of the false representations—namely, that Graphic "would . . . agree to [*14] enter into a three-(3) year contract with Packrite under which Packrite would be the sole producer of [Graphic's] requirements of [b]eer [c]artons." (*Id.* ¶ 26.) The Complaint also asserts that the results obtained from the alleged misrepresentation was Packrite's assistance with the Clorox Project. (*Id.* ¶¶ 28, 29, 31.)

Despite the specific allegations outlined above, however, the Court finds that Packrite has failed to comply with Rule 9(b)'s particularity requirements by failing to allege sufficient facts showing Packrite's "intent to deceive from the outset." *Krispy Kreme Doughnut Corp. v. Advantage Group Enter., No. 1:08cv0092, 2008 U.S. Dist. LEXIS 100249, 2008 WL 5216227, at *4 (M.D.N.C. Dec. 11, 2008)* (citing *Leftwich v. Gaines, 134 N.C. App. 502, 521 S.E.2d 717, 723 (N.C. Ct. App. 1999))*. Where, as here, "a plaintiff assert[s] a fraud claim based upon the defendant's alleged intent not to honor" a promise, "[i]n order to satisfy the requirements of Rule 9(b)," a plaintiff "must allege specific facts which demonstrate that at the time the agreement was made, the defendant intended not to perform the agreement." *In re Inter-Act Elecs., Inc., No. 02-11557C-7G, 03-2035, 2004 WL 1052961, at *3 (Bankr. M.D.N.C. Mar. 30, 2004)*; *see Bon Aqua Int'l, Inc. v. Second Earth, Inc., No. 1:10CV169, 2013 U.S. Dist. LEXIS 11635, 2013 WL 357469, at *11 (M.D.N.C. Jan. 29, 2013)* ("[I]n accordance with Rule 9(b), where a fraud claim stems from an alleged failure to fulfill an

agreement, the complaint must contain [*15] specific factual matter to permit the plausible inference that the defendant did not intend to honor the agreement at the time it was made.") In such cases, "the intent to deceive from the outset provides the past or existing factual basis for a fraud claim." *Krispy Kreme Doughnut Corp., 2008 U.S. Dist. LEXIS 100249, 2008 WL 5216227, at *4* (citing *Leftwich, 521 S.E.2d at 723*). To plausibly allege fraud under this theory, "the pleading party must offer external facts [alleging] that the speaker spoke falsely when stating his intent[;] [s]uch evidence most often includes the speaker's contemporaneous statements to others contradicting his manifested intent or objective facts showing that his intent could not have been truthful when made." *Id.* Packrite's Complaint is devoid of any such allegations.

The Complaint alleges that Graphic's initial intent was to enter a contract with Packrite, but that "at some point in either late 2016 or early 2017, . . . [Graphic] internally made the decision not to enter into the Beer Carton [c]ontract with Packrite, contrary to its initial representations to Packrite." (ECF No. 2 ¶ 62.) There are no factual allegations, however, of Graphic's fraudulent intent *at the time* its representatives told Packrite that Graphic would enter into a three-year contract for [*16] the Beer Carton Project. Packrite does allege that "[u]pon information and belief," Graphic's representations "regarding [its] intent to enter into the Beer Carton [c]ontract with Packrite were false when made," (*id.* ¶ 35), and that "[u]pon information and belief, [Graphic] never intended to enter into the Beer Carton [c]ontract with Packrite," (*id.* ¶ 66). Beyond these conclusory allegations, however, Packrite fails to allege any additional facts demonstrating that at the time the statements were made, Graphic had no intention of honoring its promise. *See Strum v. Exxon Co., USA, 15 F.3d 327, 331 (4th Cir. 1994)* ("Because [the plaintiff] has done nothing more than assert that [the defendant] never intended to honor its obligations under the . . . agreement, the district court's dismissal of the [fraud claim]

was entirely appropriate."); *see also Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 580 (4th Cir. 2017) (stating that "conclusory allegations . . . without more, cannot defeat [a] motion to dismiss").

Moreover, in its Complaint, Packrite specifically alleges that: (i) "all discussions and interactions between the parties from approximately August, 2016 until approximately May, 2017, were consistent with [Graphic's] previously-given assurances that the long term Beer Carton [c]ontract was in process [*17] and would ultimately be awarded to Packrite," (ECF No. 2 ¶ 39); and (ii) "*independent of [Graphic's] initial intent with respect to the Beer Carton [c]ontract*, at some point in either late 2016 or early 2017, . . . [Graphic] internally made the decision not to enter into the Beer Carton [c]ontract with Packrite, (*id.* ¶ 62 (emphasis added)). These allegations, taken as true, "tend to disprove [Packrite's] conjecture of intent to deceive at the time" the alleged fraudulent misrepresentations were made. *Krispy Kreme*, 2008 U.S. Dist. LEXIS 100249, 2008 WL 5216227, at *4 ("The mere fact that [Graphic] ultimately failed to execute a contract does not show that it had no intention of doing so from the start."). The Court, therefore, concludes that Packrite has failed to allege specific facts showing that Graphic's representations regarding its intention to enter into a three-year contract with Packrite were false when made; thus, the particularity requirement of Rule 9(b) has not been satisfied. As a result, the Court will grant Graphic's motion to dismiss this fraud claim.

## 2. Negligent Misrepresentation/Detrimental Reliance (Claim V)

Graphic next argues that Packrite's claim for negligent misrepresentation must likewise be dismissed because it fails to satisfy the [*18] heightened pleading requirements of Rule 9(b). (*See* ECF No. 9 at 10.) In response, Packrite

principally argues that, under North Carolina law, Rule 9(b)'s heightened pleading requirement "does not, and should not, apply" to its negligent misrepresentation claim. (ECF No. 11 at 14-16.) Packrite further argues, in the alternative, that even if Rule 9(b) was applicable to this claim, the Complaint states a plausible claim for relief. (ECF No. 11 at 17-18.)

In support of its argument that Rule 9(b) does not apply to this claim, Packrite primarily relies on a Fourth Circuit decision, *Baltimore Cty. v. Cigna Healthcare*, 238 F. App'x 914 (4th Cir. 2007). (*See* ECF No. 11 at 14-16.) Such reliance is misplaced given that, in *Baltimore Cty.*, the Fourth Circuit analyzed the negligent misrepresentation claim at issue under Maryland law. In that case, the Fourth Circuit found that, "[i]mportantly, a claim of negligent misrepresentation *under Maryland law* does not contain an essential showing of fraud and thus the heightened pleading requirements of Rule 9(b) do not apply." *Baltimore Cty.*, 238 F. App'x at 921 (emphasis added). By contrast, Packrite's negligent misrepresentation claim in the instant case is governed by North Carolina law,[2] under which negligent misrepresentation[3] "is primarily a fraud-based claim[,] . . . premised upon the making [*19] of a false assertion of a material fact." *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 202 n.14 (M.D.N.C. 1997) (citing *Vernon v. Steven L. Mabe Builders*, 110 N.C. App. 552, 430

---

[2] *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) ("A federal court sitting in diversity is required to apply the substantive law of the forum state.").

[3] Under North Carolina law, a claim for negligent misrepresentation exists where there is: (1) justifiable reliance; (2) to a party's detriment; (3) on information prepared without reasonable care; (4) by one who owed the relying party a duty of care. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609, 612 (N.C. 1988). Further, in North Carolina, a claim for negligent misrepresentation arises "where pecuniary loss results from the supplying of false information to others for the purpose of guiding them in their business transactions." *Driver v. Burlington Aviation, Inc.*, 110 N.C. App. 519, 430 S.E.2d 476, 480 (N.C. Ct. App. 1993) (emphasis omitted).

S.E.2d 676, 679 (N.C. Ct. App. 1993), *rev'd in part on other grounds*, 336 N.C. 425, 444 S.E.2d 191 (N.C. 1994)). The Court concludes that because fraud is an element necessary for a showing of negligent representation under North Carolina law, this claim is subject to the heightened pleading requirements of Rule 9(b). *See Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727-28 (M.D.N.C. 2015) ("Federal courts have repeatedly found that the North Carolina tort of negligent misrepresentation sounds in fraud and have applied Rule 9(b) to it.") (collecting cases).

Having concluded that Rule 9(b) is applicable to Packrite's negligent misrepresentation claim (which is based on the same factual allegations as its fraudulent misrepresentation/ inducement claim), the Court further concludes that, for the reasons discussed in Section III.B.1 above, Packrite has likewise failed to satisfy the heightened pleading requirement of Rule 9(b) with respect to this claim. Graphic's motion to dismiss Packrite's negligent misrepresentation claim will, therefore, be granted.

Graphic also argues, in a footnote, that while "Packrite's Fourth Claim for Relief is captioned 'Negligent Misrepresentation/Detrimental Reliance,' . . . detrimental reliance is an element of a fraud claim," and should be dismissed "[t]o the extent Packrite is [*20] making a claim for detrimental reliance." (ECF No. 9 at 10 n.4.) The Court agrees. As recently explained by the Western District Court of North Carolina: "[t]his Court has found no legal authority in North Carolina that would support the existence of an independent claim for detrimental reliance." *Galloway v. UP Dish Servs., LLC*, No. 1:17cv199, 2017 U.S. Dist. LEXIS 151031, 2017 WL 4106245, at *2 (Aug. 30, 2017), *adopted by* 2017 U.S. Dist. LEXIS 150085, 2017 WL 4102477 (W.D.N.C. Sep. 15, 2017). Nor has Packrite provided the Court with any such legal authority in response to Graphic's contention. Accordingly, the Court finds that, to the extent that Packrite is asserting a separate claim for detrimental reliance against Graphic, this claim will be dismissed.

### 3. Unfair and Deceptive Trade Practices (Claim V)

Graphic argues for dismissal of Packrite's UDTPA claim because "Packrite's UDTPA allegations are identical to its fraud allegations," and Packrite has "failed[ ] to plead its allegations with particularity." (ECF No. 9 at 11.) Plaintiff argues, in response, that a UDTPA claim "is not properly subject to Rule 9(b)." (ECF No. 11 at 18.) Plaintiff further argues that "[e]ven under the heightened standard of Rule 9(b), however, the Complaint states a valid claim for damages" against Graphic under the UDTPA. (*Id.*)

As an initial matter, a party [*21] asserting a UDTPA claim must allege: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 653 S.E.2d 393, 399 (N.C. 2007) (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676, 681 (N.C. 2000)). Where, as here, a party raises a UDPTA claim "alleging detrimental reliance on false or deceptive representations," Rule 9(b) applies. *Topshelf Mgmt.*, 117 F. Supp. 3d at 731. Under the section of the Complaint titled "Unfair and Deceptive Trade Practices," Packrite states:

> 94. The allegations contained in the preceding paragraphs of this Complaint [paragraphs 1-93] are incorporated herein by reference.
>
> 95. [Graphic's] wrongful and unlawful actions and conduct, *as described above*, constitute an unfair method of competition and an unfair or deceptive act or practice, in an affecting commerce, that has significantly injured, and will continue to injure, Packrite, thereby proximately causing, and continuing to proximately cause, damages to Packrite.

(ECF No. 2 ¶¶ 94, 95 (emphasis added).) Based on these allegations, the Court concludes that Packrite's UDTPA claim is "predicated on precisely

2018 U.S. Dist. LEXIS 147058, *21

the same alleged misrepresentations" as its fraud claim. *Topshelf Mgmt, 117 F. Supp. 3d at 731*. Accordingly, "[t]o treat the [fraud claim and the UDTPA claim] with two different pleading standards would permit [*22] [Packrite] to bring a disguised fraud claim without putting [Graphic] on notice of the 'particular circumstances' of its [UDTPA] claim and without having to show 'substantial prediscovery evidence' of these circumstances." *Id.* (quoting *Harrison, 176 F.3d at 784*.) For this reason, as well as those discussed with respect to Packrite's failure to plead its fraud claim in compliance with Rule 9(b), the Court likewise finds that Packrite has failed to plead its UDTPA claim with sufficient particularity. The Court will, therefore, grant Graphic's motion to dismiss Packrite's UDTPA claim.

## IV. PLAINTIFF'S REQUEST TO FILE AMENDED COMPLAINT

Lastly, the Court notes that, in its Brief in Opposition to Defendant's Partial Motion to Dismiss, Packrite requests leave to file an amended Complaint "[s]hould this Court conclude that the allegations in the Complaint in support of Packrite's fraud claims lack some measure of particularity required by Rule 9(b)." (ECF No. 11 at 14 n.1.) However, the manner in which Packrite has sought leave to amend its Complaint violates Local Rules 7.3(a) and 15.1 which require that each motion be "set out in a separate pleading," and that "the moving party . . . attach the proposed amended pleading to the motion." L.R. 7.3(a), 15.1. Accordingly, to [*23] the extent Packrite seeks leave to amend its Complaint, it must do so consistent with this Court's Local Rules. *See Jackson v. Beard, 828 F.2d 1077, 1078 (4th Cir. 1987)* (explaining that a district court's local rules "have the force and effect of law, and are binding upon the parties and the court which promulgated them.").

For the reasons stated herein, the Court enters the

following:

## ORDER

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand, (ECF No. 14), is DENIED.

IT IS FURTHER ORDERED that Defendant's Partial Motion to Dismiss the Complaint, (ECF No. 8), is GRANTED. Claim III—Fraudulent Misrepresentation/ Inducement, Claim IV— Negligent Misrepresentation/Detrimental Reliance, and Claim V—Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 are HEREBY DISMISSED WITHOUT PREJUDICE.[4]

This, the 29th day of August, 2018.

/s/ Loretta C. Biggs

United States District Judge

---

**End of Document**

---

[4] *See N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co., 740 F. Supp. 2d 694, 706 (M.D.N.C. 2010)* (dismissing complaint "*without prejudice* on the independent ground that it fails under Rule 9(b)" (emphasis added)); *Elman II v. JP Morgan Chase Bank, N.A., No. PJM 10-31, 2010 U.S. Dist. LEXIS 70192, 2010 WL 2813351, at *4 (D. Md. July 13, 2010)* (dismissing deceptive trade practices claim *without prejudice* for failure to allege with the particularity required under Rule 9(b)). *See also Williams v. Bell Helicopter Textron Inc., 417 F.3d 450, 456 (5th Cir. 2005)* (holding that dismissal with prejudice as to the plaintiff's Complaint was improper where the basis for dismissal was failure to meet heightened pleading standard under Rule 9(b)).

# [Whitney v. Wal-Mart Stores, Inc.](#)

United States District Court for the District of Maine

August 31, 2004, Decided

Civil No. 04-38-P-H

**Reporter**

2004 U.S. Dist. LEXIS 17437 *; 2004 WL 1941345

STANLEY WHITNEY, Plaintiff, v. WAL-MART STORES, INC., Defendant.

**Subsequent History:** Magistrate's recommendation at Whitney v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 24344 (D. Me., Dec. 3, 2004)

**Prior History:** Whitney v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 5237 (D. Me., Mar. 30, 2004)

**Disposition:** Magistrate Judge's recommendation to deny plaintiff's motion to dismiss.

**Counsel:** [*1] For STANLEY WHITNEY, Plaintiff: CURTIS WEBBER, LINNELL, CHOATE & WEBBER, LLP, AUBURN, ME.

For WAL-MART STORES INCORPORATED, Defendant: MARK V FRANCO, THOMPSON & BOWIE, PORTLAND, ME. LISA FITZGIBBON, BENDETSON, THOMPSON & BOWIE, PORTLAND, ME.

For DISABILITY RIGHTS CENTER INC, Disability Rights Center, Amicus: JOHN P. GAUSE, DISABILITY RIGHTS CENTER, AUGUSTA, ME.

**Judges:** Margaret J. Kravchuk, U.S. Magistrate Judge.

**Opinion by:** Margaret J. Kravchuk

## Opinion

**RECOMMENDED DECISION ON**

## PLAINTIFF'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Plaintiff Stanley Whitney sued Wal-Mart Stores in Maine Superior Court for alleged violations of the Maine Human Rights Act Whitney filed his state court complaint in January 2004. Wal-Mart filed in this court a timely notice of removal based on diversity of citizenship. However, Wal-Mart failed to promptly file a copy of the notice in the Superior Court. On July 16, 2004, roughly contemporaneously with the close of discovery in this matter, the Superior Court entered a routine scheduling order, thereby alerting the parties to the fact that the Superior Court was not on notice of the removal petition. Realizing that the notice of removal had not been properly [*2] filed in the state court, Wal-Mart immediately filed a copy of the notice of removal in the Superior Court. (Docket No. 16, Attach. 2.) [1] Whitney, on the other hand, filed a motion to dismiss his case based on a lack of jurisdiction, evidently due to concern over his ability to contact or otherwise rely on one of his designated experts. (Docket No. 16, Attach. 5.)

As of this date, the Superior Court's docket reflects the following "finding," dated July 20, 2004: "Removal to Federal Court Entered on 7/20/2004."

There is no suggestion in Whitney's motion that jurisdiction would not be properly exercised in this court based on the parties' diversity and [*3] the

---

[1] According to Linda B. Benjamin, a paralegal at the lawfirm of Thompson & Bowie, LLP, she visited the Superior Court clerk's office on February 12, 2004, in order to obtain a certified copy of that court's docket and informed personnel at the office that the matter would be removed to federal court. (Aff. of Linda B. Benjamin, Docket No. 16, Attach. 4.)

amount in controversy. The only issue is whether Wal-Mart's failure to file a copy of the notice in the state court deprives this court of the power to proceed to a final disposition. Pursuant to 28 U.S.C. § 1446, a defendant desiring to remove a civil action from state court to federal court must timely file a notice of removal in the federal district court in which the state action is pending, together with a copy of all process, pleadings and papers served on the defendant in the state action. 28 U.S.C. § 1446(a) & (b). Thereafter, the defendant must "promptly" provide adverse parties with written notice of the removal and file in the state court a copy of the notice. Id., § 1446(d). According to the removal statute, it is the provision of notice to adverse parties and the filing of a copy of the notice in the state court "which shall effect removal and the State court shall proceed no further unless and until the case is remanded." Id.

Although it cannot reasonably be said that Wal-Mart's roughly six-month delay in filing a copy of the notice of removal in the Superior Court was prompt, it is apparent that federal jurisdiction [*4] exists and that the purpose of the removal statute has not been thwarted in this case. None of the cases cited by the parties suggests that federal jurisdiction turns on 1446(d) as opposed to 1446(a). See, e.g., Mfrs. & Traders Trust Co. v. Hartford Accident & Indem. Co., 434 F. Supp. 1053, 1055 (W.D.N.Y. 1977) ("The filing of a copy of the petition for removal is a procedural and ministerial act, failure of which does not defeat the federal court's jurisdiction."). To the contrary, federal jurisdiction arises upon the defendant's compliance with 1446(a) & (b). Berberian v. Gibney, 514 F.2d 790, 792-93 (1st Cir. 1975) ("We are inclined to agree with Professor Moore, that the jurisdiction of the federal court attaches as soon as the petition for removal is filed with it, and that both state and federal courts have jurisdiction until the process of removal is completed."). See also Parker v. Malone, 2004 WL 190430, *2, 2004 U.S. Dist. LEXIS 1096, *7 (W.D. Va. Jan. 15, 2004) ("Federal jurisdiction commences when the defendant files the notice of

removal with the district court, and filing the notice with the state clerk affects [*5] the state's jurisdiction rather than federal jurisdiction.") (citing cases); 14C Charles Alan Wright et al., Federal Practice & Procedure § 3736 (1998) ("The filing of a copy of the notice of removal in the state court is a procedural and ministerial act and a number of federal courts have held that a failure to do so will not defeat the district court's subject matter jurisdiction.").

As for the statutory purpose, the requirement that defendants promptly file a copy of the notice with the state court is designed to avoid duplicative labor and possible inconsistent results by bringing an end to the state court's exercise of concurrent jurisdiction. See Berberian, 514 F.2d at 792-93; Delavigne v. Delavigne, 530 F.2d 598, 601 n.5 (4th Cir. 1976); Hampton v. Union Pac. R.R., 81 F. Supp. 2d 703, 705 (E.D. Tex. 1999). It is apparent here that the Superior Court has not engaged in any proceedings and merely issued a preliminary scheduling order. Perhaps more importantly, the Superior Court's docket reflects a willingness to cede jurisdiction to the federal court. Thus, the purpose of the removal statute is not undermined in any way by [*6] this court's exercise of jurisdiction. [2] Under these circumstances, I **RECOMMEND** that the court **DENY** the plaintiff's motion and proceed to judgment in this matter.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de*

---

[2] Theoretically, Wal-Mart's failure to promptly file a copy of the notice with the state court might permit that court to proceed with the case, given its concurrent jurisdiction, since the state court's jurisdiction was not properly extinguished, but any concerns that might arise under such circumstances are not present in light of the Superior Court's July 20, 2004, docket entry to the effect that it does not intend to proceed with the matter.

*novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within [*7] ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Margaret J. Kravchuk

U.S. Magistrate Judge

Dated August 31, 2004

---

**End of Document**